ETHEL M. WIGGINS AND RUBY M. COLE v. HARRY TAYLOR

No. 763SC332

(Filed 6 October 1976)

1. Adverse Possession § 25— known and visible boundaries — sufficiency
   of evidence

   In an action by plaintiffs to have themselves declared owners of
   and entitled to possession of a particularly described tract of land,
   evidence was sufficient to support a finding that plaintiffs held the
   land in question under known and visible boundaries continuously
   for more than twenty years where such evidence tended to show that
   three of the boundaries were streams and the fourth began at a con-
   crete marker and ran along a line of marked trees to a clearly wit-
   nessed corner, and the marks along the line were between thirty-five
   and fifty years old.

2. Adverse Possession § 25— continuous possession for more than 20
   years — sufficiency of evidence

   In an action by plaintiffs to have themselves declared owners of
   and entitled to a particularly described tract of land, evidence sup-
   ported a finding that plaintiffs had been in continuous possession of
   the land for more than twenty years where such evidence tended to
   show that the plaintiffs' predecessor (their father through whom
   they claimed by will) regularly cut timber and wood from the land,
   raked straw and hunted on the land from 1910 to 1938, from 1938
   until the alleged trespass in 1974 by defendant the plaintiffs peri-

odically cut wood from the land, plaintiffs listed the land and paid taxes thereon until the year of the alleged trespass, and there was no evidence of a claim of title or estate in the land by anyone other than plaintiffs and their predecessor except for defendant's listing the land for taxes in 1974.

APPEAL by defendant from *Lanier, Judge.* Judgment entered 24 November 1975 in Superior Court, CRAVEN County. Heard in the Court of Appeals 1 September 1976.

Plaintiffs instituted this action to have themselves declared owners of and entitled to possession of a particularly described tract of land and to recover damages for trespass by defendant thereon. Defendant admitted the entry upon the described tract but alleged that he was the owner thereof. The case was tried before the judge without a jury.

Plaintiffs' evidence tended to show the following: the tract of land in controversy was known as the Haity land and was bounded on the north by Spring Branch, on the west and south by Cahooque Creek, and on the east by land belonging to the United States (formerly the Carl Morton tract). The line between the old Carl Morton tract and the Haity land (the eastern boundary of the Haity land) runs from near the head of Spring Branch at point four on the map (Plaintiffs' Exhibit A) to point five in Cahooque Creek. The line then follows Cahooque Creek to the mouth of Spring Branch and up Spring Branch to its head. The chops and blazes along the line from point four to point five were forty to fifty years old. There were witness trees at both point four and point five in which the chops were thirty-five to forty years old. There is an old concrete marker at point four.

Hunter Moore was the father of plaintiffs and lived on a tract of land near the Haity land. They claim title under their father's will. The Haity land has not been cultivated and has been timberland for sixty-five years. Hunter Moore regularly cut timber and firewood, raked straw, and hunted on the Haity land from 1910 until his death in 1938. Since 1938 his sons have periodically cut timber from the Haity land for their sisters, the plaintiffs. The plaintiffs have paid taxes on the Haity land through the year 1974. Defendant first listed the Haity land for taxes in 1974 and used a bulldozer on a portion of the land in April 1974, precipitating this lawsuit.

Defendant's evidence tended to show the following: A map dated 1917 shows a concrete corner at point four, witness trees at point five, and a marked line between point four and point five. In 1957 the Hunter Moore heirs claimed the Haity land lying to the west of the line between point four and point five. One defense witness testified that there was no line visibly marked between point four and point five. Another defense witness testified that there is an old marked line between points four and five.

The trial judge found facts and concluded:

"That the plaintiffs and their predecessors in title have been in actual, open, hostile, exclusive and continuous possession of the land described in the complaint, in the character of owner, and they have exercised exclusive dominion over the land and have made such use thereof and have taken such profits therefrom as the land was ordinarily susceptible of in its then condition, and that such possession has been under known and visible lines and boundaries for more than twenty years next preceding the institution of this cause of action."

He further concluded that the defendant has no right, title, interest, or estate in the land described in the complaint. He thereupon entered judgment decreeing that plaintiffs are the owners and entitled to immediate possession of the particularly described tract of land (the Haity land); that defendant has no right, title, interest, or estate in the particularly described land; and rendered judgment against defendant for damages for trespass upon the land.

Defendant appealed.

*Lee, Hancock and Lasitter, by C. E. Hancock, Jr., for the plaintiffs.*

*Beaman, Kellum, Mills & Kafer, by James C. Mills, for the defendant.*

BROCK, Chief Judge.

[1] The main point of defendant's appeal is his contention that plaintiffs' evidence is not sufficient to support a finding that plaintiffs held the land in question under known and visible boundaries continuously for more than twenty years.

Plaintiffs' evidence shows that the land in question is bounded on two sides by Cahooque Creek and on a third side by Spring Branch. Clearly these three boundaries are known and visible. The fourth boundary begins at a concrete marker near the head of Spring Branch and runs along a line of marked trees to a clearly witnessed corner in Cahooque Creek. According to plaintiffs' witness, who was admitted to be an expert surveyor, the marks at point four and point five and along the line between are thirty-five to fifty years old. One of defendant's witnesses testified that there was an old marked line between points four and five. Another of defendant's witnesses, a former adjoining landowner, said he had a map dated 1917 that showed a concrete marker at point four, marked witness trees at point five, and a marked line of trees in between. This evidence is clearly sufficient to support a finding of a known and visible boundary of long standing from point four to point five, the only boundary not evidenced by water.

[2] The remaining question raised by defendant is whether the evidence supports a finding that plaintiffs have been in continuous possession of the Haity land for more than twenty years.

The evidence is uncontradicted that plaintiffs' predecessor (their father through whom they claim by will) regularly cut timber and wood from the Haity land, raked straw for his stables, and hunted on the Haity land from 1910 until his death in 1938. The evidence is likewise uncontradicted that from 1938 until the alleged trespass by defendant, the plaintiffs periodically cut timber and wood from the Haity land, listed the Haity land, and paid the taxes thereon through the year 1974—the year of the alleged trespass. The record is devoid of evidence of a claim of title or estate in the Haity land by anyone other than plaintiffs and their predecessor except for defendant's listing the land for taxes in 1974. The evidence supports the finding that the land was not cultivated but was held for the production of wood and timber.

It would appear that the possession of plaintiffs' predecessor from 1910 to 1938 is sufficient to support plaintiffs' claim to title. "The possession need not have been during the period next preceding the commencement of the suit; but if the title ripened by adverse possession at any time prior thereto; it will be sufficient for a recovery, unless subsequent to its

vesting it had in some way been divested." *Alexander v. Cedar Works,* 177 N.C. 138, 98 S.E. 312 (1919). There is no evidence of a divesting of title since the death of plaintiffs' predecessor in 1938. Be that as it may, in our opinion the evidence supports a finding that plaintiffs have used, occupied, and claimed title to the Haity land in their own right from 1938 to 1974 sufficiently to establish title in them. Actual possession with the intent to hold solely for the possessor to the exclusion of others "is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser." *Locklear v. Savage,* 159 N.C. 236, 74 S.E. 347 (1912). "The possession need not be unceasing, but the evidence should be such as to warrant the inference that the actual use and occupation have extended over the required period." *Alexander v. Cedar Works, supra.*

We have reviewed defendant's assignment of error to the admission into evidence of an aerial photograph and a map depicting the land in controversy and find it to be without merit. Likewise, defendant's argument that the court erred in finding that defendant had no interest in the land is untenable.

In our opinion the evidence supports the findings of fact, the findings of fact support the conclusions of law, and the conclusions of law support the judgment.

Affirmed.

Judges VAUGHN and MARTIN concur.