ALLEN WILLIS, SR. AND WIFE, LUCY G. WILLIS v. JACKIE JOHNS AND WIFE, MRS. JACKIE (LILA) JOHNS

No. 8110SC411

(Filed 2 February 1982)

1. Adverse Possession § 17.2— color of title—commissioner's deed—sufficiency of description

    A commissioner's deed which described the land conveyed as being bounded on the east by Montague Street, on the north and south by lands described in certain deed books at specified pages, and on the west by the land of a named person contained a description capable of being made certain by testimony at the trial so that it was sufficient to constitute color of title.

**2. Adverse Possession § 18— color of title—presumptive possession to outer bounds of deed**

Where one enters upon land and asserts ownership of the whole under an instrument constituting color of title, the law will extend his occupation of a portion thereof to the outer bounds of his deed, provided no part of the premises is held adversely by another.

APPEAL by plaintiffs from *Farmer, Judge.* Judgment entered 4 December 1980 in Superior Court, WAKE County. Heard in the Court of Appeals 8 December 1981.

Plaintiffs appeal from a judgment dismissing their complaint to recover possession of real property on the ground that defendants had possessed the property adversely under color of title for more than seven years preceding institution of this action.

*Vaughan S. Winborne for plaintiff-appellants.*

*Harrell & Titus, by Bernard A. Harrell and Richard C. Titus, for defendant-appellees.*

WHICHARD, Judge.

Plaintiffs instituted this action in June 1977 to recover possession of real property, alleging fee simple title in themselves and wrongful and unlawful possession by defendants. Defendants answered, alleging they purchased the property in 1964 from Wake County at a public sale for delinquent taxes and claiming that the judgment of Superior Court and the Commissioner's Deed pursuant thereto constituted color of title. The Commissioner's Deed indicated that Wake County had obtained the property upon failure of the owners, heirs at law of one Henry Sanders, to pay taxes; and that defendant Jackie Johns had been the last and highest bidder at the sale. As a further defense, defendants asserted that since acquiring the property they had erected a dwelling house thereon, and that plaintiffs' recovery thereof thus would constitute unjust enrichment. Defendants sought a judgment declaring the property described in their deed free and clear of plaintiffs' claims.

The court appointed a referee-surveyor to survey and map the property. At trial, without a jury, the surveyor testified for plaintiffs that the residence occupied by defendants was situated on the Isom Cook tract which had been conveyed to plaintiffs. He

further stated that the boundary description found in defendants' deed did not coincide precisely with the property in question and that the name of Henry Sanders, predecessor in title to the delinquent taxpayers through whom defendants claimed, did not appear in the files on the Isom Cook tract.

Plaintiff Allen Willis, Sr. testified that before he purchased the tract he had walked over it, had had the title searched, and had been satisfied with the title. Until the year of trial, he had paid taxes on the property. When he discovered that defendants were building a home on his property, he tried several times to contact defendant Jackie Johns and did, in fact, discuss the problem with him. Plaintiff Lucy G. Willis offered corroborative testimony.

Defendants' evidence tended to show that, in 1964, defendant Jackie Johns had purchased his tract of land, which included the property claimed by plaintiffs; that he had had it surveyed and marked; and that he had paid property taxes on it ever since. In October 1968, he had the basement of his house excavated on the disputed portion of his property, and he had a driveway constructed from the location of the house to the street. Johns could not recall talking to Allen Willis about the disputed portion until after his home had been completed and he had lived in it for approximately ten years.

The court found as facts that, in 1963, Wake County commenced a foreclosure action against the heirs at law of Henry Sanders for delinquent taxes on lands described in plaintiffs' complaint; that, in 1964, defendant Jackie Johns received a deed to lands completely encompassing plaintiffs' tract; that, in 1968, defendants commenced construction of their home by excavating for a basement; and that, while excavating, defendants received but ignored plaintiffs' warnings that defendants were on plaintiffs' property. It concluded that defendants acquired good and sufficient title only to that portion of the tract described in the tax deed which did not encompass plaintiffs' land; that, although the tax deed as to the portion embracing plaintiffs' land was defective and conveyed nothing to defendants, it did constitute color of title to plaintiffs' land; that defendants' possession of plaintiffs' land was for a period greater than seven years next preceding institution of this action; and that, by virtue of defend-

ants' adverse possession under color of title, fee simple title had vested in defendant Jackie Johns prior to filing of the lawsuit. The court decreed defendant Jackie Johns the fee simple owner and dismissed plaintiffs' complaint.

[1] Plaintiffs contend the Commissioner's Deed, and the judgment of Superior Court from which it originated, did not contain a description of the land either certain in itself or capable of being made certain so that the deed would constitute color of title. While a commissioner's deed in a judicial sale constitutes color of title, G.S. 1-38(a) (Cum. Supp. 1981), a party who uses a deed to establish color of title must prove that the boundaries in the deed cover the land in dispute, *Skipper v. Yow*, 238 N.C. 659, 78 S.E. 2d 600 (1953). When the description leaves uncertain what property is embraced, parol evidence is admissible to fit the description to the land. *Id.*

The description in defendants' deed referred to land "situated in Raleigh Township, Wake County," and read:

> Bounded on the east by Montague Street
> Bounded on the north by its land described in Book 289, Page 359; Book 1264, Page 342; Book 1112, Page 284 and Book 1112, Page 285.
> Bounded on the west by the land of Graham Morgan.
> Bounded on the south by land described in Book 1196, Page 96; Book 912, Page 301; Book 1238, Page 513.

Defendants concede that the deed "is not artfully drawn." In light of other evidence at trial, however, it was sufficient to permit an accurate determination of the tract conveyed.

The description begins by setting forth the eastern boundary as Montague Street, which the evidence showed to be in St. Mary's Township in Garner. Some of the deeds mentioned in the description refer to St. Mary's Township in Garner, and since the description otherwise places the property in that township, error in describing the township was not fatal. The description continues by setting forth the northern boundary as identifiable lands deeded to Mary Stewart (Book 289, page 359) and C. G. Irving, Jr. (Book 1264, Page 342). The northern boundary is also described by reference to two other parcels which lie too far west to form a boundary with the disputed property but which do aid

in defining its northwest corner. On the west, the property is bounded by property of Graham Morgan, which was established not only by testimony of the surveyor but also by testimony of a woman who lived in the vicinity, knew Morgan, and knew the location of the branch forming Morgan's eastern boundary, which was defendants' western boundary. By reference to one deed (Book 1196, Page 96), the commissioner's conveyance established the southwestern corner. Finally, the southern boundary is defined by two deeds, the first to property of the Sallie Whitaker subdivision (Book 912, Page 301) and the second to a lot in the Sallie Whitaker Land Subdivision deeded to Bernice Walton (Book 1238, Page 513).

Additionally, the surveyor testified that, as to defendants' tax deed, he was "satisfied that part of the land is described in the deed which is outlined in blue." A blue line demarcated the land defendants claimed on the survey by which the surveyor illustrated his testimony. Although White expressed reservations about the deeds establishing the northwest and southwest corners because they defined no boundary, the map he prepared otherwise clearly showed the boundaries of defendants' property.

The court was able from the foregoing to establish with sufficient certainty the boundaries of the property defendants claimed. The evidence supports its findings establishing the boundaries. This assignment of error is, therefore, overruled.

[2] Plaintiffs also contend the court erred in determining that defendants, whose home occupied only a portion of the disputed property, adversely possessed the entire tract. Where, as here, one enters upon land and asserts ownership of the whole under an instrument constituting color of title, the law will extend his occupation of a portion thereof to the outer bounds of his deed, provided no part of the premises is held adversely by another. *See Price v. Tomrich Corp.*, 275 N.C. 385, 167 S.E. 2d 766 (1969); *Price v. Whisnant*, 232 N.C. 653, 62 S.E. 2d 56 (1950); *J. Webster, Real Estate Law in North Carolina* § 264 (1971 & Supp. 1977). Exclusive possession of a portion, if continued without interruption for seven years, will ripen title to all the land embraced in the deed. *Id.* It is undisputed here that defendants' exclusive adverse possession of a part of the disputed property continued well beyond seven years. Their title by adverse possession under color

of title, therefore, extended to all the property described in the Commissioner's Deed, which embraced all of plaintiffs' tract.

Plaintiffs' final assignment of error attacking the judgment as a whole depends upon their first two assignments, and is therefore without merit.

Affirmed.

Judges CLARK and BECTON concur.