PEGGY E. McMANUS, PLAINTIFF V. G. LEE KLUTTZ, GRAYSON M. KLUTTZ AND L. STEVE KLUTTZ, DEFENDANTS

No. COA03-608

(Filed 3 August 2004)

**1. Appeal and Error— sanctions—failure to include documents in record on appeal**

Defense counsel is sanctioned $500.00 under N.C. R. App. P. 34(a)(3) and 34(b)(2) based on its failure to include plaintiff's voluntary dismissal in the record on appeal, thus causing defendants to file a motion to withdraw the Court of Appeals' prior opinion dismissing the appeal as interlocutory and to amend the record to include plaintiff's voluntary dismissal, because the Court of Appeals incurred unnecessary expenses and the parties experienced further delay in the resolution of their claim.

**2. Adverse Possession— color of title—known and visible lines and boundaries—lappage**

The trial court did not err by granting partial summary judgment in favor of plaintiff based on a finding that plaintiff acquired fee simple ownership of the pertinent strip of land by virtue of seven years adverse possession under color of title pursuant to N.C.G.S. § 1-38(a), because: (1) plaintiff's deed contains a thorough metes and bounds description of the property, and three maps and the testimony of two surveyors show the disputed land as falling within the boundaries of the deed; (2) N.C.G.S. § 1-38(b)(1)-(2) is not the only method by which property may be held under known and visible lines and boundaries, and claimants may still prove known and visible lines and boundaries under common law methods pursuant to N.C.G.S. § 1-38(a); (3) the manmade difference in growth and maintenance between plaintiff's maintained property and defendants' waist-high overgrown property provides visual notification of the extent of plaintiff's possession; (4) there is evidence that the visible line was long standing for roughly thirty years prior to the initiation of this lawsuit; and (5) although the deeds of each party encompassed the disputed property, plaintiff as junior grantee claiming title by seven years adverse possession under color of title did not have to show that the boundaries of the lappage were visible on the ground since she established the required adverse possession within those lines in an actual, open, hostile, exclusive, and continuous manner for the required seven year period.

Appeal by defendants from an order entered 17 March 2003 by Judge Russell J. Lanier, Jr. in Carteret County Superior Court. Heard in the Court of Appeals 25 February 2004.

*Ward & Smith, P.A., by Ryal W. Tayloe and Eric J. Remington, for plaintiff-appellee.*

*Clark, Newton, Evans & Craige, L.L.P., by John Richard Newton, for defendant-appellant.*

HUNTER, Judge.

G. Lee Kluttz and Grayson M. Kluttz ("defendants")[1] appeal from a grant of partial summary judgment in favor of Peggy E. McManus ("plaintiff"). For the reasons stated herein, we affirm.

[1] As an initial matter, we note that this Court previously filed an opinion dismissing this appeal as interlocutory due to the failure of defendants' counsel to include plaintiff's Voluntary Dismissal of her Claim for Damages in the Record on Appeal. *McManus v. Kluttz,* —— N.C. App. ——, 595 S.E.2d 238 (2004) (unpublished). Without the Voluntary Dismissal, the documents in the Record on Appeal showed that other claims were still pending in the trial of this case. Accordingly, we dismissed the appeal as interlocutory because the trial court had not certified the case for appeal under Rule 54(b) of the North Carolina Rules of Civil Procedure nor had defendant argued that the order affected a substantial right. *See Embler v. Embler,* 143 N.C. App. 162, 164-65, 545 S.E.2d 259, 261 (2001). Defendants then filed a motion to withdraw the opinion and amend the record to include plaintiff's Voluntary Dismissal, thus changing the status of defendants' appeal from interlocutory to final.

Although this Court granted defendants' motion, we note that our previous opinion had to be withdrawn and that a considerable amount of time and resources were wasted as a result of defendants' counsel's error. It is the appellant's duty and responsibility to ensure the completeness and proper form of the Record on Appeal. *See* N.C.R. App. P. 9(a) *et. seq.; State v. Alston,* 307 N.C. 321, 341, 298 S.E.2d 631, 644 (1983). Due to defendants' counsel's error, the Court incurred unnecessary expenses and the parties experienced further delay in the resolution of their claim. Therefore, this Court elects in its discretion pursuant to Rules 34(a)(3) and 34(b)(2) of the North

---

1. Defendant L. Steve Kluttz was removed as a party during the course of this appeal.

Carolina Rules of Appellate Procedure to sanction defendants' counsel in the amount of $500.00. *See* N.C.R. App. P. 34(a)(3), 34(b)(2). We now proceed to consider the merits of this appeal.

On 16 November 1979, the Clayton Fulcher Seafood Company transferred a tract of land on Harkers Island in Carteret County to a woman named Bessie Scott. The deed for the land transfer and a survey map of the property are recorded in the Carteret County Registry at Book 16, Page 95. Registered land surveyor John W. Collier ("Collier") performed the survey according to the deed's metes and bounds description, and placed metal stakes in the ground to mark the boundaries of the property. Collier also marked the locations of these stakes on the survey map. Following Bessie Scott's death, ownership of the land passed to her son, Elliot Anderson Scott ("Scott").

On 21 September 1990, plaintiff and her husband (now deceased) purchased the tract of land from Scott. The purchase is recorded in the Carteret County Registry at Book 643, Page 412. Soon thereafter, registered land surveyor W. D. Daniels ("Daniels") performed a second survey of the property. Although they were not sticking up from the ground, Daniels physically identified all but two boundary stakes from the previous survey. Notably, however, Daniels identified every stake along the western boundary of plaintiff's property. Daniels then remarked the property boundaries by setting flags and wooden "witness" stakes beside the original metal stakes. According to plaintiff, these stakes and flags remained in the ground "for the first five or so years" after the property was purchased.

On plaintiff's property there is also a small home, to which she and her husband added a second story sometime after its purchase. Just west of the home is a strip of land that is the subject of this dispute. Until plaintiff's purchase, Scott maintained and cleared the yard and the disputed strip of land. In addition, the Collier and Daniels surveys each identified the disputed strip as falling within the boundaries of plaintiff's property. As such, plaintiff and her husband believed they owned the strip and actively maintained it since 1990 by seeding, mowing the grass, planting three pampas bushes, and paying the related property taxes.

Directly next to this strip, however, is a plot of land owned by defendants since 1964. Defendants' purchase is recorded in the Carteret County Registry at Book 254, Page 204. Although there is a house trailer on the property, it is only used occasionally and the

property is primarily used for storage of automobiles and other items of business. Defendants' yard is unkempt and overgrown with waist-high scrub brush, weeds, and smilax. Photographs and testimony in the record show that the overgrown nature of the property creates a visible distinction between the land maintained by plaintiff and the land maintained by defendants.

Based on the deed to their property, defendants allege they own the strip of land just west of plaintiff's home. In March 2001, registered land surveyor Sherwin D. Cribb ("Cribb") created a map of defendants' property based on the metes and bounds description in their deed. Cribb's map identifies the disputed strip as falling within the property owned by defendants. The map also shows that the eastern boundary line of defendants' land runs through a portion of plaintiff's home. Cribb states that during the course of his work, he did not find any survey markers delineating the disputed tract of land that were readily open or visible.

Around December of 2000, defendants noticed plaintiff's grass and other plantings on the disputed strip of land. Defendants' son then bulldozed the strip, tearing out the grass and pampas bushes and destroying a drainpipe running from plaintiff's home. Upon this incursion, plaintiff hired registered land surveyor Robert H. Davis ("Davis") to perform another survey of the property. Like Collier and Daniels, Davis identified the disputed strip as falling within the property owned by plaintiff. Davis also states that while performing the survey he physically located and identified every stake on the western line of plaintiff's land that was referenced in the previous survey.

Plaintiff then filed a complaint alleging, among others, that defendants' assertion of ownership was a cloud upon her title, which she acquired by seven years adverse possession under color of title. Defendants denied plaintiff had met the requirements for adverse possession and alleged superior title and fee simple ownership of the strip of land. The trial court granted partial summary judgment in favor of plaintiff, finding that she acquired fee simple ownership of the strip by virtue of seven years adverse possession under color of title.

[2] The sole issue on appeal is whether the trial court properly granted partial summary judgment in favor of plaintiff. This Court reviews grants of summary judgment *de novo*. *Falk Integrated Tech., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999).

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). A genuine issue of material fact exists if the fact alleged constitutes a legal defense or is of such a nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971). However, a question of fact which is immaterial does not preclude summary judgment. *Id.*

Defendants assign as error the trial court's grant of partial summary judgment on grounds that genuine issues of material fact exist concerning plaintiff's character of possession and plaintiff's holding the property under known and visible lines and boundaries. We conclude that any questions of fact are immaterial and that summary judgment was appropriate.

Section 1-38(a) of the North Carolina General Statutes provides that one acquires title to real property after possessing it for seven years under color of title and under known and visible lines and boundaries. N.C. Gen. Stat. § 1-38(a) (2003).[2] In addition, such possession must be actual, open, hostile, exclusive, and continuous for the required time period. *Merrick v. Peterson*, 143 N.C. App. 656, 663, 548 S.E.2d 171, 176, *disc. review denied*, 354 N.C. 364, 556 S.E.2d 572 (2001).

Defendants do not dispute plaintiff's possession under color of title.

Adverse possession under color of title is occupancy under a writing that purports to pass title to the occupant but which does not actually do so either because the person executing the writing fails to have title or capacity to transfer the title or because of the defective mode of the conveyance used.

*Cobb v. Spurlin*, 73 N.C. App. 560, 564, 327 S.E.2d 244, 247 (1985). In North Carolina, a deed may constitute color of title so long as it contains an adequate description of the land. *Marlowe v. Clark*, 112 N.C. App. 181, 186, 435 S.E.2d 354, 357 (1993). In addition, the claimant must prove that the boundaries described in the deed cover

---

2. If adverse possession is not under color of title, the required statutory period of possession is twenty years. *See* N.C. Gen. Stat. § 1-40 (2003).

MCMANUS v. KLUTTZ

[165 N.C. App. 564 (2004)]

the land in dispute. *McDaris v. "T" Corporation*, 265 N.C. 298, 300-01, 144 S.E.2d 59, 61 (1965). Since plaintiff's deed contains a thorough metes and bounds description of the property, and because three maps and the testimony of two surveyors show the disputed land as falling within the boundaries of the deed, the requirement of color of title is satisfied. *See e.g. Willis v. Johns*, 55 N.C. App. 621, 624-25, 286 S.E.2d 646, 648-49 (1982).

However, defendants assert that summary judgment was improper because genuine issues of material fact exist concerning plaintiff's possession of the land under known and visible lines and boundaries. Defendants argue that, under North Carolina General Statutes § 1-38(b)(1)-(2), plaintiff is required to demonstrate the marking of boundaries by stakes or other monuments that are at least eighteen inches above ground level for the entire seven year period. Although surveyors Daniels and Davis physically identified markers on the property, defendants point out that the markers were only in place for the first five years of plaintiff's possession. In addition, the markers were not eighteen inches above the ground, and surveyor Cribb did not locate markers at all. Accordingly, defendants argue that plaintiff did not possess the land under known and visible lines and boundaries.

This argument, however, is based on the incorrect premise that § 1-38(b)(1)-(2) provides the only method by which property may be held under known and visible lines and boundaries. In 1973, the General Assembly amended § 1-38 to include subsection (b), which provides that if property boundaries are identified by distinctive markings on trees or by stakes raising eighteen inches above the ground, and if a survey map is recorded in the county registry, "then the listing and paying of taxes on the real property . . . shall constitute prima facie evidence of possession of real property under known and visible lines and boundaries." N.C. Gen. Stat. § 1-38(b).[3] The addition of § 1-38(b) did not abrogate the provisions of § 1-38(a), but was merely "designed to *facilitate* proof of possession under known and visible lines and boundaries, which is often difficult with respect to farmland and woodland not actually occupied." James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 14-12, at 660 (1998) (emphasis added). Thus, § 1-38(b) simply provides one undisputable method by which a claimant may establish possession under known and visible lines and boundaries in difficult cases. However,

---

3. The 1973 amendment also added subsection (c) to § 1-38. However, since subsection (c) is not relevant to the resolution of this matter, it is not discussed here.

since § 1-38(a) remains valid, claimants may still prove known and visible lines and boundaries under common law methods.

Under our common law interpretations, known and visible lines and boundaries must apprise the true owner and the world of the extent of the possession claimed. *McDaris*, 265 N.C. at 303, 144 S.E.2d at 63. Accordingly, this Court has held that a line of trees marked by old chops and blazes can sufficiently indicate the extent of possession to satisfy the requirement of known and visible lines and boundaries. *Wiggins v. Taylor*, 31 N.C. App. 79, 82, 228 S.E.2d 476, 478 (1976), *disc. review denied*, 291 N.C. 717, 232 S.E.2d 208 (1977). In *Wiggins*, plaintiffs claimed adverse possession over a tract of land, the eastern boundary of which defendant claimed was not marked by visible lines and boundaries. However, evidence showed that the eastern boundary began at a concrete marker and then followed a line of trees that had been marked by chops and blazes. Several witnesses, including a surveyor and a former adjoining land owner, testified that they saw or knew of the eastern boundary created by the chops and blazes. In addition, the chops and blazes were between thirty-five and fifty years old. Based on these facts, this Court concluded there was sufficient evidence to support a finding of possession under known and visible lines and boundaries. *Id. See also Beam v. Kerlee*, 120 N.C. App. 203, 213, 461 S.E.2d 911, 919 (1995), *cert. denied*, 342 N.C. 651, 467 S.E.2d 703 (1996) (holding that one's ability to cut a path marking the boundaries of his property constitutes sufficient evidence of known and visible lines boundaries to withstand a motion for directed verdict).[4]

Similar to the manmade chops and blazes in *Wiggins,* the manmade difference in growth and maintenance between plaintiff's and defendants' property provides visual notification of the extent of plaintiff's possession. Photographs, affidavits, and depositions in the record demonstrate that plaintiff consistently maintains her yard, including the disputed tract of land, by seeding, mowing, and planting bushes. In contrast, defendants' property opposite the disputed tract is overgrown with waist-high scrub brush, weeds, and smilax. Thus, just as the marked trees in *Wiggins* created a visible line marking the extent of possession, the dramatic difference in yard main-

---

4. We acknowledge that both *Wiggins* and *Beam* address the issue of known and visible lines and boundaries under N.C. Gen. Stat. § 1-40 rather than § 1-38, which applies to this case. However, the requirement of known and visible lines and boundaries in § 1-40 is identical to the requirement found in § 1-38(a). Therefore, in determining whether known and visible lines and boundaries exist under § 1-38(a), analogy can be made to precedent establishing such boundaries under § 1-40..

tenance in this case creates a visible line marking the extent of plaintiff's possession.

Further, just as a surveyor and former land owner in *Wiggins* testified to their familiarity with the tree markings, registered surveyor Daniels and former Clayton Fulcher Seafood Company employee Kenny Willis ("Willis"), both state they have seen and are familiar with the dramatic contrast in growth and maintenance between the two yards. Also like the thirty-five to fifty year old markings on the trees in *Wiggins*, there is evidence that the visible line in this case is long standing. In their affidavits, Willis and plaintiff both state that prior to plaintiff's purchase, former owner Scott and his mother maintained the yard, including the disputed strip of land. Willis's affidavit also states that defendants' yard has been overgrown since at least 1970. In addition, aerial photographs in the record, dating back to Clayton Fulcher Seafood Company's transfer of the land to Bessie Scott, show a clearly visible line between the two properties caused by overgrowth in defendants' yard. Thus, a visible line between the properties has existed for roughly thirty years prior to the initiation of this lawsuit. Based on all of these facts, we conclude that the waist-high overgrowth in defendants' yard, and the contrasting maintenance of plaintiff's yard, creates a sufficiently visible line to apprise defendants of the extent of possession claimed by plaintiff. Therefore, the requirement of possession under known and visible lines and boundaries is satisfied. As such, defendants' asserted questions of fact regarding the placement of markers are immaterial because they do not affect the outcome of the case. *See Kessing*, 278 N.C. at 534, 180 S.E.2d at 830.

Yet even if the dramatic difference in growth and maintenance does not create sufficiently known and visible lines and boundaries, the matter can be resolved by the applicability of lappage rules to this case. Lappage cases are a specific type of adverse possession case in which the deeds of each party encompass the disputed property. As such, the deeds are said to "lap" upon each other. *See* James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 14-13, at 660-61 (1998). Since the metes and bounds descriptions in both plaintiff's and defendants' deeds include the strip of land west of plaintiff's home, the disputed property is lappage.

In order to make out a superior title to land that is lappage, it is necessary to ascribe exclusive possession to one of the claimants. Accordingly, our courts have formulated certain rules to establish possession of the lappage. *See Price v. Tomrich Corp.*, 275 N.C. 385,

392-94, 167 S.E.2d 766, 771-72 (1969). *See also* Webster, *Webster's Real Estate Law in North Carolina* § 14-13, at 660-61. One rule is that a junior grantee claiming title by seven years adverse possession under color of title does not have to show that the boundaries of the lappage were visible on the ground, so long as he establishes the required adverse possession within those lines. *See Allen v. Morgan,* 48 N.C. App. 706, 709, 269 S.E.2d 753, 754 (1980); *Price,* 275 N.C. at 394, 167 S.E.2d at 772. Therefore, any questions about the visible lines and boundaries created by differences in growth and maintenance are resolved by the applicability of lappage rules. Accordingly, plaintiff can gain title to the disputed property even without known and visible boundaries on the ground so long as she can establish the elements of adverse possession within the boundaries identified by her deed.

We therefore turn to the common law requirements of adverse possession. As stated earlier, adverse possession under color of title must be actual, open, hostile, exclusive, and continuous for the required seven year period. *Merrick,* 143 N.C. App. at 663, 548 S.E.2d at 176. Regarding actual possession, there is evidence that plaintiff has been in actual physical possession of the disputed property for over seven years. Since 1990, plaintiff and her husband planted grass and pampas bushes on the disputed track and maintained the strip by mowing the lawn and keeping weeds down. In addition, it is the general rule that where one enters upon a portion of land, but asserts ownership of the whole land based on color of title, the law extends his possession to the outer bounds of his deed so long as the land is not held adversely by another. *Willis,* 55 N.C. App. at 625, 286 S.E.2d at 649; *Vance v. Guy,* 223 N.C. 409, 413, 27 S.E.2d 117, 121 (1943). Thus, plaintiff is also deemed in possession of the tract because she has lived in her home within the boundaries of her deed for over seven years, her deed encompasses the disputed tract of land, and because there is no evidence of competing possession by any other person.

However, defendants argue that material issues of fact exist concerning the open character of plaintiff's possession. Although plaintiff claims she and her husband actively maintained the disputed strip of land throughout the required seven year period, defendants submit the deposition of plaintiff's yard maintenance worker, who states that he only cut plaintiff's grass once a month for about seven months each year and that he only saw plaintiff and her husband at their home and surrounding property "now and then." In addition,

defendants provide the affidavit of a local fisherman who states that he parked his car on plaintiff's property and never saw any person there throughout the entire summer season of 1997. Finally, defendants' son claims he never saw plaintiff or her husband on the property. Since this testimony conflicts with plaintiff's evidence, defendants argue that issues of fact exist that made summary judgment improper.

Even if plaintiff was rarely seen in person, her alterations to the land satisfied the requirement of open and notorious possession. Possession is open and notorious if it places the true owner on notice of an adverse claim. *Cothran v. Motor Lines*, 257 N.C. 782, 784, 127 S.E.2d 578, 580 (1962). Further, working activities such as cutting timber or pulpwood creates sufficiently open and notorious possession if they are kept up with such frequency and regularity as to give notice to the public that the party performing the work is claiming ownership of the land. *Price*, 275 N.C. at 398, 167 S.E.2d at 775. Although mowing a lawn once a month for seven months a year is not a large amount of time, it is a regular and consistent schedule for mowing grass that may not require attention twelve months out of the year. In addition, the fact that defendants' son and a local fisherman never saw plaintiff or her husband on the property are not sufficient to refute plaintiff's other acts of ownership. Even if plaintiff was never seen on her property, the second story addition to her home, her yard maintenance, and her planted bushes are all clearly visible to anyone passing by. These activities should have apprised defendants that someone was on their land, making use of it, and asserting an ownership interest, regardless of who they did or did not see. Therefore, despite the conflicting testimony offered by defendants, summary judgment was appropriate because the undisputed evidence was sufficient to place defendants on notice of an adverse claim.

Defendants next argue that plaintiff's possession was not hostile because her use of the land was permissive. Before plaintiff and her husband purchased the property from Scott, defendant G. Lee Kluttz alleges he had a conversation with plaintiff's husband. Recalling that conversation in his deposition, Mr. Kluttz states that:

[Mr. McManus] was telling me that he was figuring on buying Bessie Scott's house. I said, well now, I want to tell you something before you do. I said you'd better check into it because it's on part of my land—just like that, that's what I told him. And I said, now I'm telling you about it because—uh, I said I'd straighten it out or

move the house back. . . . I said, now if you want to buy it, it's your business to do what you want to.

Based on these statements, defendants assert that plaintiff's use of the disputed land was permissive and cannot constitute adverse possession.

Defendants' argument fails, however, because nothing in Mr. Kluttz's conversation with plaintiff's husband constituted permission to use the disputed land. At most, Mr. Kluttz's statement that "you'd better check into it because it's on part of my land" provided plaintiff and her husband with notice that a potential boundary issue existed concerning the property. However, notice is not equivalent to permission. Moreover, Mr. Kluttz's statement that "it's your business to do what you want to" removes him from the situation altogether, rather than assert his role as an owner of the land giving permission. Certainly, choosing not to involve oneself in another person's affairs cannot be construed as permission. Finally, Mr. Kluttz's statement that "I'd straighten it out or move the house back" appears to be a denial of permission. Viewed in this light, Mr. Kluttz's conversation actually heightens the hostile nature of plaintiff's possession because she and her husband continually resided in the home, and remodeled the home, without ever moving it away from defendants' alleged property line. Accordingly, any factual issues presented by the alleged conversation are immaterial because at most it provided notice but not permission, and at worst it increased the hostile nature of plaintiff's possession.

Finally, we note that the requirements of exclusive and continuous possession are also satisfied. For possession to be exclusive, other people must not make similar use of the land during the required statutory period. *See State v. Brooks,* 275 N.C. 175, 183, 166 S.E.2d 70, 75 (1969). Here, defendants offer no evidence that they made use of the disputed property or shared it with plaintiff in any way. In fact, defendants admit that their property is only used occasionally and is primarily used for storage of automobiles and other items of business. Defendants' son also states in his deposition that the family has used their property "very little" since the time his mother became sick in 1991. Further, there is no evidence of anyone else making use of the property or of plaintiff sharing the property in any manner during the time of her possession. Therefore, plaintiff's possession was exclusive.

Similarly, plaintiff's possession was continuous for the required seven year period. To be continuous, adverse possession does not

have to be unceasing, but the evidence must warrant the inference that actual use and occupation has extended over the required period and that during it, the claimant has, from time to time, continuously subjected the land to its susceptible use. *See Helton v. Cook*, 27 N.C. App. 565, 568, 219 S.E.2d 505, 507 (1975), *disc. review denied*, 289 N.C. 297, 222 S.E.2d 697 (1976); *Locklear v. Savage*, 159 N.C. 236, 239, 74 S.E. 347, 348 (1912). Here, plaintiff has continuously lived in her home since 1990. In addition, plaintiff has regularly subjected the land to use during the course of her possession by adding a second story to her home, planting grass and bushes along the disputed property, and hiring a maintenance worker to mow the lawn. No other evidence, other than the defendants' allegations that plaintiff was rarely seen at her house and surrounding property, indicates that plaintiff ceased occupying the property for any amount of time during the required period. Therefore, the acts of residence and yard maintenance support the inference that plaintiff's occupation of the land extended over the required seven year period.

For the above stated reasons, we conclude that plaintiff has held the disputed land under color of title and known and visible boundaries in an actual, open, hostile, exclusive, and continuous manner for the required seven year period. Any factual issues presented by defendants are immaterial in that they do not affect the outcome of the case. Therefore, the trial court did not err in granting partial summary judgment in favor of the plaintiff.

Affirmed.

Judges McCULLOUGH and LEVINSON concur.