IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-492

Filed: 17 April 2018

Brunswick County, No. 15 CVS 1620

ALLAN and JENNIFER COLE, Plaintiffs,

v.

BONAPARTE'S RETREAT PROPERTY OWNERS' ASSOCIATION, INC.; BONAPARTE'S RETREAT I PROPERTY OWNER'S ASSOCIATION, INC.; and CHARLES G. HAMILTON, JR., Defendants.

Appeal by Plaintiffs from summary judgment entered 19 December 2016 by Judge Ola M. Lewis in Brunswick County Superior Court. Heard in the Court of Appeals 4 October 2017.

*Hodges Coxe Potter & Phillips, LLP, by Bradley A. Coxe, for Plaintiffs-Appellants.*

*Marshall Williams & Gorham, LLP, by John L. Coble, for Defendants-Appellees.*

INMAN, Judge.

When a grantor who owns one parcel of land and adversely possesses an adjacent parcel without color of title conveys both parcels to grantees by deed that describes only the parcel in which the grantor holds title, the grantees may not tack their time of possession to the grantor's time to satisfy the statutorily prescribed period for adverse possession. Further, a trial court may not impose an easement when neither party has raised the issue, the easement is not suggested by the

evidence, and the relief results in substantial prejudice to the owner of the servient parcel.

Plaintiffs Allan and Jennifer Cole ("Mr. Cole" and "Mrs. Cole," respectively; collectively "Plaintiffs") appeal from the entry of summary judgment in favor of defendants Bonaparte's Retreat Property Owners' Association, Inc. ("BRPOA"), Bonaparte's Retreat I Property Owner's Association, Inc. ("BRIPOA"), and Charles G. Hamilton, Jr. ("Mr. Hamilton," collectively "Defendants"). Plaintiffs contend that: (1) they were entitled to summary judgment granting them title to real property by adverse possession and rescinding its prior transfer from BRPOA to BRIPOA; (2) the trial court erred in granting summary judgment on all claims in favor of Defendants; and (3) the trial court erred in ordering an easement over their property for Defendants' benefit. After careful review, we affirm in part and reverse in part.

## I. **FACTUAL AND PROCEDURAL HISTORY**

In 1972, real estate developer Ocean Side Corporation ("Ocean Side") began development of the Bonaparte's Retreat I subdivision along the Calabash River in Brunswick County, North Carolina. The developer filed a plat map of the subdivision with the Brunswick County Register of Deeds (the "Register of Deeds"), designating discrete lots for development as well as various "reserved areas." One such designated lot, Lot 18, was located on the north side of the development and, per the plat map, was bordered to the south by a cul-de-sac, to the west and east by Lots 17 and 19,

respectively, and to the north by a reserved area (the "Reserved Area"). This particular Reserved Area was bordered to the south by Lots 17 through 22 and to the north by the Calabash River. An excerpt from a plat map showing the above areas is provided below, with italicized annotations by this Court for legibility:



On 22 July 1981, Ocean Side conveyed Lot 18 to Gerald Rodney Earney ("Mr. Earney") by warranty deed. The property description in the deed describes only Lot 18 and, by express reference to a plat map filed with the Register of Deeds, does not include the Reserved Area between Lot 18 and the Calabash River.

BRPOA incorporated in August of 1984 to serve as a homeowner's association for the Bonaparte's Retreat subdivision. The following year, Ocean Side conveyed several properties to BRPOA by non-warranty deed, including the Reserved Area north of Lot 18. After taking ownership of the Reserved Area, however, BRPOA failed to file the necessary reports with the North Carolina Secretary of State and was suspended by the State on 24 January 1986. In 1991, homeowners in Bonaparte's Retreat decided to "reincorporate" as a second homeowner's association, BRIPOA, rather than revive BRPOA.

Sometime after purchasing Lot 18, Mr. Earney built a pier into the Calabash River off of a portion of the Reserved Area located between Lot 18 and the river ("Parcel A"). According to an affidavit executed by his son, Mr. Earney mistakenly believed that Parcel A was part of Lot 18 and considered Lot 18 to be waterfront property. Mr. Earney cleared and landscaped Lot 18 and Parcel A, docked boats at the pier on Parcel A, used Parcel A to access the pier, and prohibited other people from using the pier without his permission. Mr. Earney had a septic tank installed but built no other structures on Lot 18 or Parcel A. An excerpt from a survey obtained by Plaintiffs showing the pier, lot, and parcel is provided below, with italicized annotations by this Court for legibility:



On 22 September 2000, Mr. Earney conveyed Lot 18 to Plaintiffs by general warranty deed. Per the deed, Mr. Earney conveyed only Lot 18 to Plaintiffs and, by reference to a plat map on file with the Register of Deeds, excluded from the property description Parcel A and the Reserved Area. Although the real estate listing that led

Plaintiffs to purchase Lot 18 advertised the property as waterfront, Plaintiffs never met or spoke with Mr. Earney to inquire about the discrepancy between the listing and all of the conveyance documents, including the deed. Mr. Cole acknowledged that, "everything [Mr. Earney] signed said Lot 18."

Plaintiffs, like Mr. Earney, mistakenly believed Lot 18 was a waterfront lot. Beginning in 2001, Plaintiffs started clearing trees and mowed Parcel A. In 2002, Plaintiffs began repairing and renovating the pier, adding a gate and handrails. Plaintiffs tied a rope or chain across the pier entrance, posted no trespassing signs on the pier, and hired a landscaper to mow and maintain Lot 18 and Parcel A during this time. Plans to build a home on Lot 18 coalesced and Plaintiffs hired a contractor to construct their house in 2008. When their contractor surveyed the property prior to the start of construction, Plaintiffs discovered for the first time that they did not, in fact, own Parcel A. Plaintiffs' contractor also told them that construction of their home would require a variance from the Town of Calabash's Board of Adjustment (the "Board of Adjustment"), because Plaintiffs planned to construct the house within 25 feet of Parcel A in violation of the town's setback requirements.

Upon learning they did not own Parcel A, Plaintiffs sought to purchase Parcel A from BRIPOA's board of directors. The sale was stymied, however, because the board of directors discovered it was without requisite authority under BRIPOA's

declarations to approve such a transfer.[1]  Plaintiffs then applied to the Board of Adjustment to obtain the necessary setback variance.  In the variance hearing on 24 June 2008, the Calabash Building Inspector/Code Enforcement Officer "acknowledged that [Parcel A] is owned by the Bonaparte Retreat Property Owner's Association (POA) and is used for common open space.  The POA property abuts the Calabash River."  In ruling on the variance application, the Board of Adjustment made findings of fact, including findings that "the adjacent property to the rear is open space owned by the subdivision's Property Owner's Association[,]" and "the adjoining rear property is required open space for the subdivision[.]"  The variance was approved contingent on BRIPOA's consent, and BRIPOA's board of directors provided written consent to the variance to the Board of Adjustment a few days later.

Construction began on Plaintiffs' home in 2013.  Plaintiffs placed "no trespassing" signs on Lot 18 and Parcel A to keep people off the building site and used Parcel A to store materials during construction.  In October of 2014, Plaintiffs again sought to purchase Parcel A from BRIPOA.  When BRIPOA's board of directors once more ascertained that they could not sell Parcel A to Plaintiffs under their by-laws, Plaintiffs rescinded their offer.

---

[1] Nothing in the record indicates that Plaintiffs or BRIPOA's board of directors were aware in 2008 that Parcel A and the Reserved Area had not yet been conveyed from the then-defunct BRPOA to BRIPOA.

Plaintiffs filed their complaint for adverse possession against BRPOA on 2 September 2015. Two days later, BRPOA's corporate status was reinstated by the North Carolina Secretary of State. On 9 September 2015, BRIPOA's board of directors met and voted to appoint various officers of BRPOA, naming Mr. Hamilton president of the newly-revived entity. On 28 October 2015, BRPOA conveyed the Reserved Area including Parcel A to BRIPOA by special warranty deed, with Mr. Hamilton signing as president of BRPOA. Plaintiffs filed an amended complaint on 1 March 2016, adding Mr. Hamilton and BRIPOA as defendants and, in addition to seeking a declaratory judgment that they owned Parcel A by adverse possession, asked the court to order by specific performance the rescission or correction of the special warranty deed. Defendants filed their answer to the amended complaint and asserted no counterclaims.

All parties moved for summary judgment. Following a hearing, the trial court granted summary judgment in favor of Defendants and declared BRIPOA to be owner of Parcel A. The trial court also declared "an easement for ingress and egress across . . . Lot 18" in favor of BRIPOA. Plaintiffs timely appealed.

## II. **STANDARD OF REVIEW**

We review entry of summary judgment *de novo*, *Matter of Will of Allen*, ___ N.C. App. ___, ___, 801 S.E.2d 380, 383 (2017), meaning this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."

*Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (internal quotation marks and citation omitted). Rule 56 of the North Carolina Rules of Civil Procedure allows for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015). In considering the record, we do so "in a light most favorable to the party against whom the order has been entered to determine whether there exists a genuine issue as to any material fact." *BellSouth Telecomms., Inc. v. City of Laurinburg*, 168 N.C. App. 75, 80, 606 S.E.2d 721, 724 (2005).

## III. ANALYSIS

Section 1-40 of the North Carolina General Statutes permits a party to acquire title to real property through adverse possession without color of title if he "has possessed the property under known and visible lines and boundaries adversely to all other persons for 20 years[.]" N.C. Gen. Stat. § 1-40 (2017). The term "adverse" has been defined by our Supreme Court as follows:

> It consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser.

> It must be decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner.

*Locklear v. Savage*, 159 N.C. 236, 237-38, 74 S.E. 347, 348 (1912). In short, "[t]o acquire title to land by adverse possession, the claimant must show actual, open, hostile, exclusive, and continuous possession of the land claimed for the prescriptive period . . . under known and visible lines and boundaries." *Merrick v. Peterson*, 143 N.C. App. 656, 663, 548 S.E.2d 171, 176 (2001).

*A. Plaintiffs Cannot Tack Their Adverse Possession of Parcel A to Their Predecessor's Adverse Possession*

In certain circumstances, a party who has adversely possessed real property for less than 20 years may satisfy the prescriptive period of N.C. Gen. Stat. § 1-40 by "tacking" his possession to that of a prior adverse possessor. "Tacking is the legal principle whereby successive adverse users in privity with prior adverse users can tack successive adverse possessions of land so as to aggregate the prescriptive period of twenty years." *Dickinson v. Pake*, 284 N.C. 576, 585, 201 S.E.2d 897, 903 (1974) (citing J. Webster, *Real Estate Law in North Carolina* § 289 (1971)). To establish the necessary privity for tacking, the " 'initial adverse possessor [must] transfer[] his possession to a successor adverse possessor by some recognized connection. Thus the privity connection is made out if an adverse possessor transfers his possession to another by deed or will or even by parol transfer.' " *Lancaster v. Maple Street*

*Homeowners Ass'n, Inc.*, 156 N.C. App. 429, 438, 577 S.E.2d 365, 372 (2003) (quoting James A. Webster, Jr., *Webster's Real Estate Law in North Carolina*, § 14-9, at 654 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999)).

Courts in most other states allow tacking when a grantor adversely possessing property beyond the bounds of a parcel he owns by deed conveys the parcel described by deed to a grantee who continues adversely possessing the same extraneous property. *See, e.g., Bryan v. Reifschneider*, 181 Neb. 787, 792, 150 N.W.2d 900, 904 (1967) ("It is the generally accepted rule . . . [that] the taking of possession of contiguous lands, some of which are not within the calls of the deed, which have been used by the grantor as a unit . . . , and the transfer of possession pursuant to a deed or contract has evidentiary value as to the existence of privity."); *see also* James A. Webster, Jr., *Webster's Real Estate Law in North Carolina*, § 14.09 at 14-18 (Patrick K. Hetrick et al. eds., 6th ed. 2017) ("The general rule is that tacking is allowed in such a fact situation.").

But the North Carolina Supreme Court has repeatedly departed from the majority rule. *See generally Ramsey v. Ramsey*, 229 NC 270, 49 S.E.2d 476 (1948); *Newkirk v. Porter*, 237 N.C. 115, 74 S.E.2d 235 (1953); *Burns v. Crump*, 245 N.C. 360, 95 S.E.2d 906 (1957); *see also* Webster, Jr., *Webster's Real Estate Law in North Carolina, supra*, § 14.09 at 14-18 (recognizing North Carolina's deviation from the general rule).

In *Ramsey*, the plaintiff brought an ejectment action against the defendant, an adjacent landowner, over the defendant's use of a spring located on the plaintiff's property. 229 N.C. at 271, 49 S.E.2d at 476. The defendant and his predecessors in title had used and maintained the spring for over 50 years, and the defendant raised adverse possession as a defense to the ejectment claim. *Id.* at 271, 49 S.E.2d at 476. The defendant had adversely possessed the spring for only seventeen years at the time of the action, but argued that his adverse possession should be tacked to his predecessor's in title in order to satisfy the requisite twenty-year statutory period. *Id.* at 272-73, 49 S.E.2d at 477-78. In determining whether the defendant and his predecessor had the necessary privity to allow tacking, the Supreme Court looked to the property actually conveyed to the defendant as set forth in his deed:

> It is true there is evidence tending to show that his predecessor in title used the spring as he used it. But his deed did not convey or purport to convey the spring or the triangular tract upon which it is located. The description contained in defendant's deed does not embrace it. *Hence there is no privity between him and his predecessors in title as to this land which lies outside the boundary of the land conveyed by them. Therefore, he is not permitted to tack their possession, even if adverse within the meaning of the law*, to his possession so as to show adverse possession for the requisite statutory period.

*Id.* at 273, 49 S.E.2d at 477 (emphasis added). As a result, the defendant was unable to satisfy the prescriptive period and his claim failed. *Id.* at 273, 49 S.E.2d at 478.

In *Newkirk*, our Supreme Court applied the same rule, citing *Ramsey* and its cognates:

> [A] deed does not of itself create privity between the grantor and the grantee as to land not described in the deed but occupied by the grantor in connection therewith, and this is so even though the grantee enters into possession of the land not described and uses it in connection with that conveyed.

*Newkirk*, 237 N.C. at 120, 74 S.E.2d at 238-39 (citing *Blackstock v. Cole*, 51 N.C. 560 (1859); *Boyce v. White*, 227 N.C. 640, 44 S.E.2d 49 (1947); *Ramsey*, 229 N.C. 270, 49 S.E.2d 476; *Simmons v. Lee*, 230 N.C. 216, 53 S.E.2d 79 (1949)).

In *Burns*, the defendants sought to defeat a civil action for trespass under a counterclaim of adverse possession. 245 N.C. at 360-61, 95 S.E.2d at 907. The defendants' deed did not include the land claimed by adverse possession, but they contended that the deed "was intended to cover the disputed area." *Id.* at 362, 95 S.E.2d at 908. The defendants presented evidence that they and their predecessor in title had held the disputed area in open, notorious, and adverse possession for more than 20 years. *Id.* at 362, 95 S.E.2d at 908. The Supreme Court held that the defendants could not tack their adverse possession, as "[a] deed does not of itself create privity between the grantor and the grantee as to land not described in the deed but occupied by the grantor in connection therewith, although the grantee enters into possession of the land not described and uses it in connection with that conveyed." *Id.* at 364, 95 S.E.2d at 910.

*Ramsey*, *Newkirk*, and *Burns* reflect that in North Carolina, privity through a deed does not extend beyond the property described therein. "[I]t is elementary that we are bound by the rulings of our Supreme Court," *Mahoney v. Ronnie's Road Service*, 122 N.C. App. 150, 153, 468 S.E.2d 279, 281 (1996) (citation omitted), and we are therefore compelled to apply the rule as set forth in those cases.[2] As a result, we hold that Plaintiffs lack the necessary privity to tack their adverse possession of Parcel A to that of Mr. Earney.

Neither party on appeal contends that the deed from Mr. Earney to Plaintiffs included Parcel A. The deed from Mr. Earney to Plaintiffs conveys only "Lot 18[,]" with reference in the property description to a plat map that clearly divides Lot 18 and the Reserved Area that includes Parcel A.

Further, Plaintiffs' amended complaint acknowledges that: (1) Parcel A was part of the Reserved Area outside of Lot 18; (2) the Reserved Area was deeded to BRPOA; (3) Lot 18 was deeded to Mr. Earney; and (4) Mr. Earney was Plaintiffs' "predecessor in title to Lot 18[.]" When asked in his deposition whether he owned

---

[2] We acknowledge the paucity of more contemporary decisions from either this Court or the Supreme Court applying the tacking privity rule as described in *Ramsey*, *Newkirk*, and *Burns*. This Court applied the rule to affirm summary judgment dismissing an adverse possession claim in a more recent unpublished case, *C & S Realty Corp. v. Blow*, 175 N.C. App. 591, 624 S.E.2d 431, 2006 WL 91594 (2006). *C & S Realty* turned entirely on the application of the tacking privity rule as set forth in *Burns*, and the Supreme Court denied discretionary review. 635 S.E.2d 287 (2006); *see also* *Lancaster*, 156 N.C. App. at 440, 577 S.E.2d at 373 (distinguishing *Ramsey* to allow tacking where "the disputed property is included in the description in the quitclaim deeds to defendant. Defendant has privity of title to the disputed land and may tack the adverse possession[.]"), *aff'd per curiam*, 357 N.C. 571, 597 S.E.2d 672 (2003).

any additional property in Brunswick County, Mr. Cole responded "[w]e only own Lot 18." Mrs. Cole also testified that the property deeded from Mr. Earney did not include Parcel A.

Finally, the Board of Adjustment, in granting Plaintiffs' requested variance in 2008, found as a fact that Parcel A was not Plaintiffs' property. Plaintiffs did not appeal this quasi-judicial decision, and they are collaterally estopped from asserting any ownership interest in Parcel A as of that date. *See* N.C. Gen. Stat. § 160A-388(a1) (2017) (permitting boards of adjustment to issue zoning variances by quasi-judicial proceeding) *and Hillsboro Partners, LLC, v. City of Fayetteville*, 226 N.C. App. 30, 35-39, 738 S.E.2d 819, 824-26 (2013) (holding that collateral estoppel applies to quasi-judicial decisions by a municipal body and "precludes a party from contesting a previously decided factual issue" resolved therein (citation omitted)). In short, the record shows that the deed from Mr. Earney to Plaintiffs did not convey any possessory interest in Parcel A, and Plaintiffs may not rely on it alone to establish privity for tacking their adverse possession of Parcel A to Mr. Earney's adverse possession. *Ramsey* at 273, 49 S.E.2d at 477; *Newkirk* at 120, 74 S.E.2d at 238-39; *Burns* at 363, 95 S.E.2d at 909.

Because Plaintiffs cannot tack their adverse possession of Parcel A to Mr. Earney's adverse possession, they must satisfy the twenty year period of adverse possession alone. N.C. Gen. Stat. § 1-40. At the earliest, Plaintiffs began adversely

possessing Parcel A with the purchase of Lot 18 in 2000. Plaintiffs brought their action for adverse possession fifteen years later. Plaintiffs' premature action fails as a matter of law to satisfy the twenty year prescriptive period in N.C. Gen. Stat. § 1-40. The trial court therefore did not err in granting summary judgment to Defendants and denying Plaintiffs' motion for summary judgment.

*B. The Trial Court Did Not Err in Granting Defendants Summary Judgment on Plaintiffs' Remaining Claims Against BRPOA*

Plaintiffs also contend that the trial court erred in denying their summary judgment motion because BRPOA's transfer of the Reserved Area, including Parcel A, to BRIPOA was unauthorized as a matter of law. Plaintiffs have failed to meet the necessary pleading requirements to bring their claims derivatively and do not have standing to bring these particular claims individually.

The North Carolina Nonprofit Corporation Act generally prohibits claims challenging the validity of an action taken by a nonprofit corporation as ultra vires, with limited exceptions. N.C. Gen. Stat. § 55A-3-04 (2017). Under those exceptions, an action may be maintained: (1) "by a member . . . against the corporation to enjoin the act;" (2) by the corporation directly or through a derivative action; and (3) by the Attorney General. N.C. Gen. Stat. § 55A-3-04(b). In bringing a derivative claim against a nonprofit, the complaining member must comply with N.C. Gen. Stat. § 55A-7-40, which requires the plaintiff to, *inter alia*, "allege with particularity the

efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain or for not making the effort." N.C. Gen. Stat. § 55A-7-40(b) (2017).

Plaintiffs' amended complaint, even when construed liberally, fails to allege the necessary elements of a derivative claim required by N.C. Gen. Stat. § 55A-7-40(b). The amended complaint contains no allegation of any efforts by Plaintiffs to persuade Defendants to rescind the conveyance from BRPOA to BRIPOA, nor any allegation of why such efforts would be futile. Accordingly, Plaintiffs have failed to properly bring a derivative claim.

Plaintiffs have not asserted an ultra vires claim in their individual capacities. Even if we assume *arguendo* that Plaintiffs intended to bring an ultra vires action individually against BRPOA in addition to a derivative claim, the statute permits such actions by a member individually only "to enjoin the [ultra vires] act[.]" N.C. Gen. Stat. § 55A-3-04. Construing Plaintiffs' complaint liberally, the purported ultra vires acts here were the improper appointment of BRPOA's board of directors and officers and the subsequent transfer of real property to BRIPOA. Plaintiffs' complaint does not seek injunctive relief as to these actions. Instead, Plaintiffs request specific performance—an order that BRPOA and/or BRIPOA rescind or correct the deed conveying Parcel A. This claim for relief does not fall within an exception to the general prohibition against ultra vires claims. N.C. Gen. Stat. §§ 55A-3-04(a) & (b);

see *also Willow Bend Homeowners Ass'n, Inc. v. Robinson*, 192 N.C. App. 405, 411, 665 S.E.2d 570, 574 (2008) (noting that because member-defendants in an action by a homeowners' association to collect an assessment did not seek injunctive relief by counterclaim, "it is possible that N.C. Gen. Stat. § 55A-3-04 foreclosed [the d]efendants' former argument regarding the validity of Plaintiff's corporate actions [as ultra vires]"). Summary judgment was therefore properly denied to Plaintiffs and granted to Defendants.

Additionally, Plaintiffs have failed to show as a matter of law that BRPOA's board and officers were impermissibly designated. BRPOA's articles of incorporation state in pertinent part:

> 4. The corporation shall have members which may be divided into such classes as shall be provided in the by-laws. All members shall be accepted, appointed, elected, or designated *in the manner provided in the by-laws.*
>
> 5. The directors of the corporation shall be elected by the members *in the manner provided by the by-laws.*

(emphasis added). Section 55A-8-40 provides that a nonprofit "has the officers described in its bylaws or appointed by the board of directors in accordance with the bylaws." N.C. Gen. Stat. § 55A-8-40(a) (2017). The by-laws therefore determine the classes of members, how directors are elected by those members, and how officers are appointed. Plaintiffs, however, failed to introduce the by-laws at summary judgment by affidavit or exhibit, and they do not appear anywhere in the record. Because the

by-laws setting forth the classes of membership, the voting rights of each class of member, and the procedures for the designation of BRPOA's board of directors and officers are not in the record, we cannot conclude that they were violated here.

Nor do we hold that the transfer from BRPOA to BRIPOA was inherently unlawful. Plaintiffs argue that BRPOA could transfer the property only with the unanimous consent of its members, yet fail to cite any statute, case, or governing corporate document imposing such a requirement on BRPOA.[3] Instead, Plaintiffs cite decisions from other states and a North Carolina Supreme Court decision concerning the statutory rights of condominium owners in the common areas of condominium projects. *See Dunes South Homeowners Ass'n, Inc. v. First Flight Builders*, 341 N.C. 125, 459 S.E.2d 477 (1995) (interpreting provisions of the Unit Ownership Act, N.C. Gen. Stat. § 47A-1 *et seq.* (1976), to hold that a developer owning units in a condominium developer may not unilaterally exempt itself from payment of its pro rata share of maintenance expenses of common areas). Because Plaintiffs have failed to identify any statutory, corporate, or precedential legal authority prohibiting BRPOA's transfer in the manner performed here, and we have found none, we reject their argument that BRPOA's transfer was ultra vires as a matter of law. As a result

---

[3] While N.C. Gen. Stat. § 47F-3-112 (2017) requires the consent of eighty percent of a planned community association to transfer common property, that statute applies only to communities created after 1999 and other pre-existing communities meeting certain exceptions. N.C. Gen. Stat. § 47F-1-102 (2017). Plaintiffs acknowledge in their brief that these statutory requirements for the transfer of common property do not apply to Defendants.

of our holding, Plaintiffs are not entitled to recover attorneys' fees and costs under N.C. Gen. Stat. § 6-21.5 (2017) ("[T]he court . . . may award a reasonable attorney's fee to the *prevailing party* if the court find that there was complete absence of a justiciable issue[.]" (emphasis added)).

*C. The Trial Court Erred In Declaring an Easement Across Lot 18 In Favor of Defendants*

Plaintiffs' final argument on appeal posits that the trial court erred in declaring an easement across Lot 18 in favor of Defendants so that they may access Parcel A. Notably, neither Plaintiffs nor Defendants requested the imposition of such an easement in their pleadings. Nor did the trial court provide the parties with any notice or an opportunity to be heard regarding such relief before it was ordered. After review of the hearing transcript, the record, and the relevant case law, we agree with Plaintiffs.

Rule 54 of the North Carolina Rules of Civil Procedure permits a trial court to "grant the relief to which the party in whose favor [the judgment] is rendered is entitled, even if the party has not demanded such relief in his pleadings." N.C. Gen. Stat. § 1A-1 Rule 54(c) (2017). Under the rule, the relief granted "is always proper when it does not operate to the substantial prejudice of the opposing party." *N.C. Nat. Bank v. Carter*, 71 N.C. App. 118, 122, 322 S.E.2d 180, 183 (1984) (citation omitted). Relief is improper, however, where: (1) a party fails to reference or rely

upon any common law or statutory theory giving rise to such relief, *Ridley v. Wendel*, ___ N.C. App. ___, ___, 795 S.E.2d 807, 814-15 (2016); (2) the relief is not "consistent with the claims pleaded and embraced within the issues presented to the court[,]" *Fish House, Inc. v. Clarke*, 204 N.C. App. 130, 137, 693 S.E.2d 208, 213 (2010) (citation omitted); or (3) the relief is "not suggested or illuminated by the pleadings nor justified by the evidence adduced at trial." *N.C. Nat. Bank* at 122, 322 S.E.2d at 183.

Here, the trial court awarded Defendants "the right of an easement for ingress and egress across . . . Lot 18[.]" No such relief was requested by either party, and the trial court failed to identify the nature of the easement imposed. *See, e.g.,* Webster, Jr., *supra*, § 15.08 at 15-14 ("Easements may be created in at least ten ways."). The hearing transcript, for its part, reveals that the trial court considered the easement as involving necessity:

> [PLAINTIFFS' COUNSEL]: I'm sorry. Your Honor, are you finding that there is an easement over the Lot 18?
>
> THE COURT: It is, yes, sir. And – and –
>
> [PLAINTIFFS' COUNSEL]: Your Honor, I think – I would just respectfully say that that was not noticed for here today. They have not made that claim in any type of pleading at all.
>
> THE COURT: Yeah. But – but with all due respect, there's – there's no access to it. And by law, it's got to be some access to it. And so I'm of the humble opinion that it – it happens by operation of law because of the motion for

> summary judgment has been granted, because an easement can be implied.
>
> And that's why when I asked the question with regard to the aerial photo, you know, there's no clear path. . . . And I questioned counsel about how people would access this lot before the no-trespass signs were put up.
>
> . . .
>
> I have found that an easement exists by the fact that the association owns what is back there, and they have to by law have access to it.

Defendants, though they refer to the easement as both implied and by necessity in their brief, also appear to consider the easement imposed to be one of necessity, as their sole argument concerns the elements for easements by necessity. Our review is therefore focused on whether the imposition of an easement by necessity was within the scope of the pleadings and evidence presented at summary judgment. *N.C. Nat. Bank* at 122, 322 S.E.2d at 183.

Both Plaintiffs and Defendants cite *Jernigan v. McLamb*, 192 N.C. App. 523, 665 S.E.2d 589 (2008), in support of their respective positions, and we find it dispositive of the issue. As noted by the parties, the necessity leading to the easement "must arise at the time of conveyance from the common grantor." *Id.* at 527, 665 S.E.2d at 592. An easement by necessity in this case is therefore proper only if Ocean Side's conveyance of Lot 18 to Mr. Earney in 1981 resulted in inaccessibility to the Reserved Area containing Parcel A. Plaintiffs point out that the Reserved Area runs

along the northern border of Lots 17-22 in the Bonaparte's Retreat development, and an affidavit submitted at summary judgment stated that Ocean Side still owned Lot 22 until its sale to the affiant in 1984. Thus, the evidence shows that Ocean Side still had access to the Reserved Area containing Parcel A at the time of Lot 18's conveyance from the common grantor, and there is nothing in the record disclosing an inability to access Parcel A through the Reserved Area at that time. The trial court's imposition of an easement by necessity was therefore "not . . . justified by the evidence adduced at [summary judgment]" and contrary to Rule 54(c). *N.C. Nat. Bank* at 122, 322 S.E.2d at 183.

Even if we assume *arguendo* that the trial court intended to create an implied easement from prior use, the evidence necessary to impose such an easement was not before the trial court. In order to demonstrate an implied easement by prior use, one must show:

> (1) there was a common ownership of the dominant and servient parcels of land and a subsequent transfer separated that ownership, (2) before the transfer, the owner used part of the tract for the benefit of the other part, and that this use was 'apparent, continuous and permanent,' and (3) the claimed easement is 'necessary' to the use and enjoyment of the plaintiffs' land.

*Metts v. Turner*, 149 N.C. App. 844, 849, 561 S.E.2d 345, 348 (2002) (citation omitted). Here, the common owner of Parcel A, the dominant tract, and Lot 18, the servient tract, at the time of their separation was Ocean Side. However, no evidence showing

Ocean Side's use of Lot 18 to access Parcel A at the time of separation was introduced at summary judgment, nor does it appear elsewhere in the record. Thus, to the extent the trial court sought to create an easement implied by prior use, it erred in doing so. *N.C. Nat. Bank* at 122, 322 S.E.2d at 183.

Even if we were to assume that the evidence supported an easement by necessity or implied by prior use, the imposition of an easement in this action was without sufficient notice to Plaintiffs to avoid "substantial prejudice[.]" *N.C. Nat. Bank* at 122, 322 S.E.2d at 183. "An essential foundation of the Anglo-American system of jurisprudence is the protection of real and personal property interests[,]" Webster, Jr., *supra*, § 1.01 at 1-4, and the easement implied here permits the roughly 188 members of BRIPOA access across Plaintiffs' property. This severely hampers Plaintiffs' "right to exclude others, one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Dolan v. City of Tigard*, 512 U.S. 374, 384, 129 L. Ed. 2d 304, 321 (1994) (citation and internal quotation marks omitted). Given the importance of property rights generally and the right to exclude specifically, the trial court's imposition of an easement across Plaintiffs' property in favor of an entire planned community of approximately 188 members, without notice to or at the request of either party, worked to Plaintiffs' "substantial prejudice" and was error. *N.C. Nat. Bank* at 122, 322 S.E.2d at 183.

In reaching this holding, we acknowledge that Defendants' answer alleged Plaintiffs were "seeking to deny the easement rights each owner of a lot in the Development has to use the common property of the Development[.]" This invocation of some unspecified easement rights, however, was wholly inadequate to avoid Plaintiffs' substantial prejudice and does not constitute a sufficient reference to any common law or statutory theory giving rise to the easement imposed by the trial court. *Ridley*, ___ N.C. App. at ___, 795 S.E.2d at 814-15. First, the reference to an easement was made as part of Defendants' first defense, which contended the members of BRIPOA were unnamed necessary parties to Plaintiffs' action, and not as part of any affirmative assertion of easement rights or a counterclaim therefor. Second, Defendants failed to identify the nature of the easement claimed, each of which requires different evidence proving different elements. *See, e.g., Adelman v. Gantt*, ___ N.C. App. ___, ___, 795 S.E.2d 798, 803-05 (2016) (analyzing the different elements required for easements implied by prior use and easements by necessity). Defendants' oblique reference to "easement rights" in a defense of failure to join necessary parties was therefore insufficient to put Plaintiffs on notice as to which elements to disprove and what evidence to rebut. Third, the easement rights Defendants referenced as restricted by Plaintiffs' adverse possession of Parcel A were those of each member of BRIPOA "to use common property[,]" suggesting that the easement in question lay over Parcel A, if adversely possessed by Plaintiffs, to the

rest of the Reserved Area, not over Lot 18. In short, the relief ordered by the trial court "was not suggested or illuminated by the pleadings nor justified by the evidence adduced at trial[,]" and worked to Plaintiffs' substantial prejudice, constituting reversible error. *N.C. Nat. Bank* at 122, 322 S.E.2d at 183.

## IV. <u>CONCLUSION</u>

Plaintiffs are not entitled to summary judgment on their adverse possession claim because North Carolina law prohibits them from tacking their adverse possession of Parcel A to that of their predecessor in title. Nor are they entitled to summary judgment on their claims seeking to invalidate the transfer of Parcel A from BRPOA to BRIPOA, as they failed to properly plead a derivative claim, lacked standing to seek the relief requested as individual members, and did not show that the transfer was ultra vires as a matter of law. The trial court properly granted summary judgment to Defendants on these claims. Nevertheless, we reverse in part, as we hold that the trial court erred in imposing an easement across Lot 18 in favor of Defendants that was not forecasted by the pleadings, supported by the evidence, and which worked to the substantial prejudice of Plaintiffs.

AFFIRMED IN PART; REVERSED IN PART.

Judges ELMORE and DIETZ concur.