IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-842

No. COA22-117

Filed 20 December 2022

Alamance County, No. 21CVS2

CINDY LACKEY and JOHN LACKEY, Plaintiffs,

v.

CITY OF BURLINGTON, Defendants.

Appeal by Plaintiffs from Order entered 26 July 2021 by Judge Mark A. Sternlicht in Alamance County Superior Court. Heard in the Court of Appeals 8 September 2022.

*Blanco Tackabery & Matamoros, P.A., by Henry O. Hilston, Peter J. Juran, and Chad A. Archer, for plaintiffs-appellants.*

*Hartzog Law Group, LLP, by Dan M. Hartzog, Jr. and Katherine Barber-Jones, and David R. Huffman, for defendant-appellee.*

HAMPSON, Judge.

## Factual and Procedural Background

Cindy Lackey and John Lackey (Plaintiffs) commenced this action on 4 January 2021 by filing a Complaint against the City of Burlington (the City) asserting claims for Declaratory Judgment, Trespass, and Injunctive Relief to Abate a Nuisance arising from Plaintiffs' contention they acquired ownership of an alleyway abutting their property through adverse possession and/or that the City was estopped from

accepting a dedication of the alleyway to public use. In response, the City moved to Dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. On 26 July 2021, the trial court granted the City's Motion to Dismiss. Plaintiffs now appeal from the trial court's Order dismissing their Complaint with prejudice. The Record on Appeal—including the allegations in Plaintiffs' Complaint and the documentary exhibits attached thereto[1]—reflects the following:

¶ 2 On 26 July 1956, Carlton and Etta Day (the Days) subdivided a tract of land in Alamance County into seventeen residential lots known as the Rockford Acres Subdivision. The seventeen lots were designated Lots A through Q, as shown on the Rockford Acres Subdivision Plat (The Rockford Plat). The Rockford Plat proposed two streets within the subdivision, including Hawthorne Lane, running in a generally east to west direction and terminating into a dead-end alleyway located between Lots B and C (the Alleyway). (R p.8, 23) The Alleyway is the contested land in the case before us. The Rockford Plat contained the following dedication language:

> THE STREETS ON THIS PLAT WILL BE DEDICATED TO THE LOT OWNERS AND NOT TO THE GENERAL PUBLIC, EXCEPT WHEN DEDICATION REQUESTED AND ACCEPTED BY CITY OF BURLINGTON - FOR THE GENERAL PUBLIC.

---

[1] *See Eastway Wrecker Serv., Inc. v. City of Charlotte*, 165 N.C. App. 639, 642, 599 S.E.2d 410, 412 (2004) ("Since the exhibits to the complaint were expressly incorporated by reference in the complaint, they were properly considered in connection with the motion to dismiss as part of the pleadings." (citation omitted)).

At the time the Rockford Plat was recorded, the Alleyway was located outside the City limits in Alamance County.

On 2 April 1957, the Days conveyed Lots A and B in the Rockford Acres Subdivision to Otis and Barbara Lackey (the Elder Lackeys) via a Warranty Deed. This Deed contained the following dedication language:

> The streets appearing on the above described plat are dedicated for the benefit of all lot owners who purchase lots in reliance upon said plat. In addition, the grantors herein expressly reserve the right for themselves and their transferees to dedicate at any time said streets, or any part thereof, to the general public.
>
> This property is conveyed subject to, and with the benefits of, all of the provisions and restrictions contained in that indenture executed by Carlton Day and wife on 15 March 1957[.]

On 12 December 1963, the Elder Lackeys purchased property behind Lot B from a private landowner. On 27 April 1978, the Elder Lackeys purchased an additional lot from a neighboring developer, Collins & Young, Inc., behind the now-larger Lot B. Lot B and these additional lots shared a contiguous border with the Alleyway. That year, Collins & Young, Inc. also constructed, and Defendant accepted the maintenance of, a sewer line under the contested land.

On 16 October 1997, the Elder Lackeys recorded a document entitled "Final Plat Property of R. Otis Lackey and wife, Barbara C. Lackey" (the Final Plat). The

Final Plat re-divided and renamed Lot A and the now-larger Lot B to Lots 1 and 2, respectively. The Final Plat contained the following language of dedication:

> I, (we) hereby certify that I (we) am (are) the owner(s) of the property, shown and described hereon, which was conveyed to me (us) by deed as recorded in deed book SEE, page MAP, and that I (we) hereby acknowledge this plat and allotment to be my (our) free act and deed and do hereby dedicate to public use as streets, rights-of-way, and easements forever, all areas so shown or indicated on said plat.

The Final Plat denotes Hawthorne Lane, including the Alleyway, as a public right-of-way. On 13 August 2002, the Elder Lackeys conveyed Lot 2, as shown on the Final Plat, to Plaintiffs by General Warranty Deed. This conveyance was made "subject to easements, rights of way, and restrictive covenants, if any, appearing of record in the Alamance County Registry."

¶ 6 Plaintiffs allege, upon information and belief, the City annexed the Rockford Subdivision—including Plaintiffs' Lots and the Alleyway—in 2003. Plaintiffs further allege in 2003, the basement of their residence flooded because of inadequate drainage from the Alleyway. Plaintiffs inquired of the State, County, and City and were allegedly informed none of these governmental entities claimed ownership of the Alleyway or were responsible for the flooding.

¶ 7 In 2004, Plaintiffs allege they contacted the City to schedule a public discussion regarding Plaintiffs' claim to the Alleyway. City Representatives informed Plaintiffs that if they withdrew their proposed discussion from the agenda, the City would deal

with the drainage issue, and Plaintiffs would be permitted to maintain a garden, orchard, and low fence on the Alleyway. Plaintiffs withdrew their request and constructed a garden, orchard, and low fence on the Alleyway. By 2005, the City had not taken steps to improve drainage on the Alleyway or undertaken other maintenance Plaintiffs alleged was promised by the City in 2004. Plaintiffs again contacted the City with their concerns about the drainage issue, and the City improved the drainage situation on the Alleyway.

¶ 8 On 29 November 2012, Plaintiffs also received title to Lot 1 via General Warranty Deed.[2] That same year, Plaintiffs allege, the City performed a title search on the Alleyway and informed Plaintiffs they, along with the other owners of the seventeen lots shown on the Rockford Plat, owned the rights to the Alleyway. Plaintiffs sought the other lot owners to relinquish their ownership rights in the Alleyway. However, Plaintiffs only received approval from owners of fourteen of the seventeen lots. Subsequently, on 5 March 2020, the City Council voted to accept the Alleyway for public use as dedicated in both the 1956 Rockford Plat and the 1997 Final Plat.

---

[2] Plaintiffs allege the Elder Lackeys conveyed Lot 1 via this Deed, however, the Deed attached to the Complaint reflects the property was conveyed only by Barbara Lackey. Ultimately, this conveyance is immaterial to the issues in the case at hand.

¶ 9        Plaintiffs' Complaint sought Declaratory Judgments that: Plaintiffs were the owners of the Alleyway; the City was equitably estopped from claiming the Alleyway; and the City was barred from claiming the Alleyway by operation of the Doctrine of Laches.  The Complaint also sought injunctive relief against the City to enjoin the City's alleged trespass on the Alleyway and to abate the alleged nuisance resulting from the City's acceptance of the Alleyway for public use.  The City filed a Motion to Dismiss on 26 April 2021 asserting Plaintiffs' Complaint should be dismissed pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim upon which relief may be granted.  The trial court granted the City's Motion to Dismiss and entered its Order on 26 July 2021 dismissing Plaintiffs' Complaint with prejudice.  Plaintiffs timely filed written Notice of Appeal on 18 August 2021.

## Issues

¶ 10        The two issues raised by Plaintiffs on appeal to this Court are whether the trial court erred by dismissing their Complaint for failure to state a claim upon which relief may be granted based on Plaintiffs' allegations: (I) Plaintiffs own the Alleyway through adverse possession; and (II) the City should be estopped from accepting dedication of the Alleyway.

## Analysis

¶ 11        A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint." *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citing *Sutton v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970)). "The Motion to Dismiss will be allowed only when the Complaint affirmatively shows that plaintiff has no cause of action." *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 439, 206 S.E.2d 178, 182 (1974). "The Motion [to Dismiss] is seldom an appropriate pleading in actions for declaratory judgments, and will not be allowed simply because the plaintiff may not be able to prevail." *Id.* "[The Motion to Dismiss] is allowed only when the record clearly shows that there is no basis for declaratory relief as when the complaint does not allege an actual, genuine existing controversy." *Id.*

¶ 12        "When considering a 12(b)(6) motion to dismiss, the trial court need only look to *the face of the complaint* to determine whether it reveals an insurmountable bar to plaintiff's recovery." *Locus v. Fayetteville State Univ.*, 102 N.C. App. 522, 527, 402 S.E.2d 862, 866 (1991) (emphasis in original). Documents attached to and incorporated into a complaint are properly considered as part of a Rule 12(b)(6) motion to dismiss. *Eastway Wrecker Serv., Inc. v. City of Charlotte*, 165 N.C. App. 639, 642, 599 S.E.2d 410, 412 (2004). A Rule 12(b)(6) dismissal is proper where "the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Wood v. Guilford Cnty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citation omitted).

¶ 13        On appeal of a Rule 12(b)(6) motion to dismiss, this Court conducts "a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, aff'd per curiam, 357 N.C. 567, 597 S.E.2d 673, 674 (2003); *see also Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) ("Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." (citation and quotation marks omitted)). As such, this Court also views the allegations in the complaint in the light most favorable to the non-moving party. *Donovan v. Fiumara*, 114 N.C. App. 524, 526, 442 S.E.2d 572, 574 (1994) (citation omitted). Further, this Court considers "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citation omitted).

I.   Adverse Possession

¶ 14        Plaintiffs first argue the trial court erred in dismissing their claim of ownership of the Alleyway on the basis of adverse possession. In their briefing to this Court, however, Plaintiffs fail to identify specific factual allegations in their Complaint that support their claim. Instead, Plaintiffs assert in conclusory fashion that they "clearly pleaded" each of the elements of adverse possession were met. We

disagree. Plaintiffs' Complaint fails to allege facts supporting the elements of adverse possession or to demonstrate on its face an insurmountable bar to relief on that basis in several respects.

¶ 15 In North Carolina, "[t]o acquire title to land by adverse possession, the claimant must show actual, open, hostile, exclusive, and continuous possession of the land claimed for the prescriptive period (seven years or twenty years) under known and visible lines and boundaries." *Merrick v. Peterson*, 143 N.C. App. 656, 663, 548 S.E.2d 171, 176 (2001). The prescriptive period for a party claiming adverse possession under color of title is seven years. N.C. Gen. Stat. § 1-38 (2021). The prescriptive period for a person claiming adverse possession without color of title is twenty years. N.C. Gen. Stat. § 1-40 (2021).

¶ 16 First, Plaintiffs' Complaint demonstrates on its face Plaintiffs fail to meet the prescriptive period to establish their continuous possession of the Alleyway. As an initial matter, it is not expressly alleged in the Complaint on what basis Plaintiffs assert adverse possession—that is, whether they claim adverse possession under color of title or without color of title. Plaintiffs also offer no guidance on what prescriptive period applies in their briefing. Nevertheless, Plaintiffs—both in their Complaint and in briefing—appear to accept the premise they are required to meet the 20-year prescriptive period for adverse possession without color of title. Plaintiffs' Complaint affirmatively shows Plaintiffs' alleged possession of property alone cannot

meet the 20-year period.  Plaintiffs' Complaint alleges Plaintiffs did not acquire their interest in the adjoining Lot 2 from the Elder Lackeys until 2002 and did not begin using the Alleyway for their garden, orchard, and low fence until 2004.

Rather, Plaintiffs' claim for adverse possession relies on their allegation Plaintiffs "and their predecessors in interests possessed the [Alleyway] for far longer than the twenty-year (20) statutory period for adverse possession, which period began running in 1956 and 1997[.]"  In this respect, Plaintiffs effectively argue they should be permitted to "tack" their alleged possession of the Alleyway on to the possession of the Elder Lackeys.  While it appears the general rule applied in other states is to permit such tacking of possession to establish adverse possession, North Carolina has adopted a minority position.  *See Cole v. Bonaparte's Retreat Prop. Owners' Ass'n*, 259 N.C. App. 27, 35, 815 S.E.2d 403, 409 (2018).[3]  Under North Carolina law, a party may only tack their possession on to that of a prior owner where the prior owner actually conveys their interest in the allegedly adversely possessed property.  *Id.* at 34, 815 S.E.2d at 409.  If ownership is passed through a deed that does not include the allegedly adversely possessed property, the new owner may not tack the prior possession on to their own because, under North Carolina law, "privity through a

---

[3] It should be observed Plaintiffs cited *Cole* in support of their adverse possession argument in their briefing to this Court.  However, Plaintiffs failed to present any argument on this rather crucial discussion in *Cole*, which is central to Plaintiffs' argument.

deed does not extend beyond the property described therein." *Id*. at 36, 815 S.E.2d at 410.

In this case, Plaintiffs' Complaint—including the conveyances from the Elder Lackeys to Plaintiffs—reflect the Elder Lackeys did not convey any interest in the Alleyway to Plaintiffs, and thus, Plaintiffs may not tack their possession of the Alleyway on to that of the Lackeys. Plaintiffs obtained Lot 2 adjoining the Alleyway from the Lackeys in 2002. The General Warranty Deed makes no conveyance of the Alleyway. Indeed, that deed makes express reference to the 1997 Final Plat, which, itself, expressly shows the Alleyway as a public right-of-way. The deed also expressly makes the conveyance subject to any rights-of-way shown on the public record. As such, Plaintiffs, even on the allegations of their Complaint, are not permitted to tack their ownership on to that of the Elder Lackeys to establish Plaintiffs' continuous possession of the Alleyway to meet the 20-year prescriptive period.

Second, Plaintiffs' Complaint also alleges facts revealing that their alleged possession of the Alleyway was not hostile. " 'A 'hostile' use is simply a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under claim of right.' " *Daniel v. Wray*, 158 N.C. App. 161, 172, 580 S.E.2d 711, 719 (2003) (quoting *Dulin v. Faires*, 266 N.C. 257, 261, 145 S.E.2d 873, 875 (1966)). "However, the hostility requirement is not met if the possessor's use of the disputed land is permissive." *Jones v. Miles*, 189 N.C. App. 289, 292–93,

658 S.E.2d 23, 26 (2008); *see also New Covenant Worship Ctr. v. Wright*, 166 N.C. App. 96, 104, 601 S.E.2d 245, 251-52 (2004) (hostility requirement not satisfied because the possessor's use of the disputed property was permissive); *McManus v. Kluttz*, 165 N.C. App. 564, 573-74, 599 S.E.2d 438, 446 (2004) (hostility requirement satisfied because the possessor's use of the disputed property was not permissive).

¶ 20        Here, Plaintiffs' allegations show their use of the Alleyway was done with permission of the City and, thus, was not hostile to the City's ownership rights in the Alleyway. Plaintiffs alleged they approached the City about the Alleyway in 2004 and were given permission by the City to use the Alleyway property for a garden, orchard, and low fence and that the City would repair the drainage from the Alleyway into Plaintiffs' property. Indeed, in 2005, Plaintiffs again requested the City repair the drainage issue from the Alleyway and there is no allegation Plaintiffs ever reasserted any claim of ownership over the Alleyway inconsistent with their permissive use. *Jones*, 189 N.C. App. at 294, 658 S.E.2d at 27 ("true owner's grant of permission will defeat a possessor's hostile use if the possessor takes no further action to reassert [their] claim over the land").

¶ 21        Third, to the extent Plaintiffs attempt to claim adverse possession of the Alleyway as against the other Rockford Acres lot owners, Plaintiffs' Complaint

establishes Plaintiffs' possession was neither hostile nor exclusive.[4] Plaintiffs' Complaint alleges that in 2012, following the City's own title search, Plaintiffs unsuccessfully sought the other lot owners to relinquish their rights in the Alleyway. As such, their claim of ownership or possession of the Alleyway was not exclusive. Further, Plaintiffs' acknowledgement of the other lot owners' continuing rights in the property defeats any hostility of Plaintiffs' possession. *See New Covenant Worship Ctr.*, 166 N.C. App. at 103-04, 601 S.E.2d at 251-52.

¶ 22 Thus, Plaintiffs' Complaint reveals facts representing an insurmountable bar to their claim for adverse possession of the Alleyway and demonstrates Plaintiffs are not entitled to declaratory relief on this basis. Therefore, Plaintiffs' Complaint fails to state a claim for adverse possession of the Alleyway upon which relief may be granted. Consequently, the trial court did not err by dismissing Plaintiffs' claims arising in adverse possession pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.

II. Equitable Estoppel

¶ 23 In their second argument, Plaintiffs contend their Complaint alleged a claim the City should be equitably estopped from accepting the dedication of the Alleyway. At the outset, Plaintiffs—in their reply briefing—concede they make no claim there

---

[4] The other Rockford Acres lot owners are not parties to this action.

was any statutory withdrawal of the dedication of the Alleyway or of Hawthorne Lane more generally under N.C. Gen. Stat. § 136-96 (2021). Plaintiffs' argument that the City should no longer be permitted to accept dedication of the Alleyway in particular rests solely on their allegations of estoppel.

¶ 24 Specifically, Plaintiffs contend the allegations in their Complaint are akin to the facts in *Lee v. Walker*, 234 N.C. 687, 68 S.E.2d 664 (1952). There, a property owner subdivided a tract of land as shown on a map entitled a Map of Vineland, including lots, blocks, alleys, streets, and avenues. *Id*. at 697, 68 S.E.2d at 671. The name of Vineland was later changed to Southern Pines, and an identical map was recorded. *Id*. Southern Pines was later chartered by the General Assembly as the Town of Southern Pines. *Id*. The Town Charter required the Town Commissioners to "provide for repairing the streets, sidewalks and alleys and cause the same to be kept clean and in good order[.]" *Id*. at 690, 68 S.E.2d at 666. In response, the Town passed and recorded a resolution "to the effect that the town did thereby relinquish 'all right and title that the town may have in the alleyways and parks within each square or block within the town forever[.]' " *Id*. After this resolution, the Town regularly approved building permits that encroached on alleyways in the Town. The plaintiff in *Lee* applied for a building permit from the Town of Southern Pines. The Town denied the permit request on the basis it would require closing an alley on the property which the Town claimed was public. *Id*. at 689, 68 S.E.2d at 665. The North

Carolina Supreme Court ultimately held the Town was estopped from asserting any right to the alleyway at issue in that case. *Id.* at 697, 68 S.E.2d at 671. Importantly, the Supreme Court observed: "the action of the Board [passing the resolution relinquishing the Town's rights in alleyways] was tantamount to a formal rejection of the offer of dedication and was so construed and regarded by the Town of Southern Pines, the original dedicator and his successors in title for more than fifty-eight years prior to the time this controversy arose." *Id.* at 696, 68 S.E.2d at 670. The Court also noted the Town had routinely treated alleyways as private property and assessed taxes on them as such and assessed owners for the pro rata cost of paving the alleys. *Id.*

¶ 25        The allegations in Plaintiffs' Complaint are, however, distinguishable from the facts of *Lee*. Here, there is no allegation the City ever enacted any formal resolution or took action to relinquish any right in the Alleyway. Rather, Plaintiffs point to allegations that in 2002, they inquired of the City as to the ownership of the Alleyway from the City, and the City responded it did not own the Alleyway. Plaintiffs' Complaint also alleges upon information and belief, however, the City did not annex the property, including the Alleyway, into City limits until 2003. Subsequently, in 2004 and again in 2005, the Complaint alleges the City agreed to undertake maintenance on the Alleyway to improve drainage on Plaintiffs' property and permitted Plaintiffs to operate a garden in the Alleyway. These actions are not

"tantamount to a formal rejection of any offer of dedication." *Id.* The same is true of the 2012 title search by the City, after which the City informed Plaintiffs they would need to obtain relinquishment from the other lot owners to the Alleyway. This was not "tantamount to a formal rejection of any offer of dedication" by the City, but, in fact, an acknowledgement of the dedication in the Rockford Plat from 1956 which dedicated the Alleyway to the use of the lot owners until the City accepted dedication of the Alleyway for public use. There is likewise no allegation that the City has otherwise treated the Alleyway as private property by taxing the property or requiring Plaintiffs to pay the cost of any improvements or maintenance on the Alleyway. Furthermore, there is no allegation in the Complaint that the City's actions in this regard are inconsistent with any prior action. Moreover, there is no allegation the City acquiesced to the Alleyway being included or conveyed as private property. Again, to the contrary, the 1997 Final Plat referenced in the deeds from the Elder Lackeys to Plaintiffs expressly identifies the Alleyway as a public right-of-way. *See City of Salisbury v. Barnhardt*, 249 N.C. 549, 556, 107 S.E.2d 297, 302 (1959) (" 'to constitute an estoppel against the public the acts relied on must be such as to work a fraud or injustice if the public is not held to be estopped. Obviously, one who knowingly encroaches upon a highway is not within the protection of the rule. If the boundaries are fixed by a recorded map, subsequent purchasers of lots abutting thereon are charged with notice thereof, and the fact that they purchase under the

impression that a fence encroaching on the street is on the boundary line thereof will not affect the public rights, provided the municipality has done nothing to mislead them.'" (quoting 25 Am. Jur. 413, Highways, § 115)).

Thus, the allegations in Plaintiffs' Complaint are insufficient to establish a claim that the City should be estopped from accepting dedication of the Alleyway under *Lee*. Therefore, Plaintiffs have failed to state a claim for declaratory relief upon which relief may be granted on their theory of equitable estoppel. Consequently, the trial court did not err by granting the City's Motion to Dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the trial court's 26 July 2021 Order granting the City's Motion to Dismiss pursuant to Rule 12(b)(6) dismissing Plaintiffs' claims with prejudice.

AFFIRMED.

Judges COLLINS and JACKSON concur.