ROBERT H. JONES AND EMILY J. JONES, PLAINTIFFS-APPELLANTS v. MARY LEE MILES, DEFENDANT-APPELLEE

No. COA07-109

(Filed 18 March 2008)

**Adverse Possession— continuous possession—hostile use not re-established**

The trial court correctly granted summary judgment for defendant in an adverse possession action in which plaintiffs did not possess the disputed tract in a hostile manner for a continu-ous twenty-year period. Plaintiffs' possession was hostile for eleven years, the then-owners gave plaintiffs permission to use the property when approached about a sale, and there is no indication that plaintiffs expressly rejected the grant of permis-sion or put the owners on notice that they intended to continue a hostile possession.

Judge TYSON dissenting.

Appeal by Plaintiffs from order entered 16 August 2006 by Judge Zoro J. Guice, Jr. in Superior Court, Henderson County. Heard in the Court of Appeals 10 October 2007.

*Dungan & Associates, P.A., by Robert Dungan, for Plaintiffs-Appellants.*

*Roberts & Stevens, P.A., by F. Lachicotte Zemp, Jr. and Ann-Patton Nelson, for Defendant-Appellee.*

McGEE, Judge.

Roy Donald Morgan (Mr. Morgan) built a house on a tract of land (the Jones tract) in Henderson County in 1965. When Mr. Morgan built the house, he also installed a driveway and decorative shrubbery near what he believed was the western border of the property. Mr. Morgan believed the driveway and shrubbery were on his property based on a land survey prepared around 1964 or 1965. While living on the Jones tract, Mr. Morgan maintained the shrubbery by mulching and fertilizing the area. Mr. Morgan sold the property in 1973 to his brother, Charlie Morgan, Jr. (Charlie Morgan). Robert H. Jones (Mr. Jones) and Emily J. Jones (Mrs. Jones) (together, Plaintiffs) purchased the Jones tract from Charlie Morgan in 1981 and rented the house to various tenants until 1988. Since 1988, Plaintiffs have resided in the house continuously. Plaintiffs have maintained and used the driveway and have also maintained the shrubbery on a regular basis since purchasing the Jones tract. In addition, Plaintiffs paved the driveway in 1987.

Plaintiffs had the Jones tract surveyed in April 1992. The survey revealed that Plaintiffs' driveway and shrubbery actually extended outside the Jones tract and encroached onto an adjacent tract of land (the Thomas property) owned by James Thomas (Mr. Thomas) and Bernice Thomas (Mrs. Thomas) (together, the Thomases). After discovering the encroachment, Mr. Jones mistakenly believed that he and Mrs. Jones had acquired title to that portion of the Thomas property through adverse possession.[1] Nonetheless, Plaintiffs decided to "do the right thing" by offering to purchase from the Thomases the one-tenth-of-an-acre portion of the Thomas property containing Plaintiffs' driveway and shrubbery (the disputed tract).

In April 1992, Plaintiffs approached the Thomases and showed them a copy of the survey. Plaintiffs told the Thomases that even though they believed they owned the disputed tract through adverse possession, they would purchase the disputed tract to resolve the situation. According to Mr. Jones, the Thomases declined Plaintiffs' offer, stating that their property "had been a gift from God and . . . they had promised that they would never sell any part of it, even the [disputed tract], unless they sold it all." The Thomases also told Plaintiffs to "just enjoy the land" and "don't worry about it." Plaintiffs and the Thomases never had another discussion regarding the en-

---

1. Mr. Jones' belief was based on a misapprehension of the statutory period required for adverse possession.

croachment. However, even after their April 1992 conversation with the Thomases, Plaintiffs continued to believe that they owned the disputed tract through adverse possession.

Mr. Thomas died in 1998, and Mrs. Thomas decided to sell the Thomas property in 2003. Mrs. Thomas acknowledged at the time that the encroachment on the Thomas property was an "unsettled" issue. Around July 2004, Mr. Jones erected a fence around the disputed tract in order to demarcate the portion of the Thomas property that Plaintiffs were claiming by adverse possession. Mr. Jones also placed a "No Trespass" sign on the fence. Mrs. Thomas' attorney sent Plaintiffs a letter in August 2004 requesting that Plaintiffs remove the fence. The letter stated, in part:

> Since [April 1992], Mr. and Mrs. Thomas have permitted the encroachment on their property as described in the survey your surveyor prepared. The encroachment of your driveway has been permissive, and to date has not been a basis of dispute between Mr. and Mrs. Thomas and you.
>
> . . . .
>
> At this time, Mrs. Thomas insists that you immediately remove the fence to the extent it encroaches on her property. Mrs. Thomas reserves all rights with regard to the driveway encroachment. Any attempt by you to claim an interest in Mrs. Thomas' property is not acceptable. If you disagree that the driveway encroachment is not permissive and believe that the driveway encroachment is an open and hostile use by you adverse to the title of Mrs. Thomas, then you should inform me of that and prepare to remove the driveway encroachment as well.

Plaintiffs refused to remove the fence and told Mrs. Thomas' attorney that they believed they owned the disputed tract.

Mrs. Thomas sold the Thomas property in August 2004 to two families named Cashman and Dillon. Shortly thereafter, the Cashmans and Dillons put the property back on the market. They eventually sold thirteen acres of the original Thomas property to Suzanne West, and they sold the remaining portion (the Miles tract) containing the disputed tract to Mary Lee Miles (Defendant) in August 2005.

Plaintiffs filed a verified complaint in Henderson County Superior Court on 17 October 2005 alleging that they had acquired ownership

of the disputed tract through adverse possession. Defendant filed a motion for summary judgment on 17 July 2006, claiming that Plaintiffs' use of the disputed tract had been permissive since April 1992, thus interrupting the running of the twenty-year statutory period for adverse possession. *See* N.C. Gen. Stat. § 1-40 (2007). The trial court issued an order on 16 August 2006 granting Defendant's motion for summary judgment. Plaintiffs appeal.

A trial court should grant a motion for summary judgment if, when taken in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). We review a trial court's grant of a motion for summary judgment *de novo*. *Robins v. Town of Hillsborough*, 361 N.C. 193, 196, 639 S.E.2d 421, 423 (2007).

In North Carolina, "[t]o acquire title to land by adverse possession, the claimant must show actual, open, hostile, exclusive, and continuous possession of the land claimed for the prescriptive period . . . under known and visible lines and boundaries." *Merrick v. Peterson*, 143 N.C. App. 656, 663, 548 S.E.2d 171, 176, *disc. review denied*, 354 N.C. 364, 556 S.E.2d 572 (2001). Plaintiffs argue that the trial court erred by granting Defendant's motion for summary judgment because genuine issues of material fact existed with respect to all elements of Plaintiffs' claim for adverse possession.

We first address whether Plaintiffs' possession of the disputed tract was hostile to the interests of the record owners. The hostility requirement "does not import ill will or animosity but only that the one in possession of the lands claims the exclusive right thereto." *State v. Brooks*, 275 N.C. 175, 180, 166 S.E.2d 70, 73 (1969). " 'A "hostile" use is simply a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under claim of right.' " *Daniel v. Wray*, 158 N.C. App. 161, 172, 580 S.E.2d 711, 719 (2003) (quoting *Dulin v. Faires*, 266 N.C. 257, 261, 145 S.E.2d 873, 875 (1966)). The hostility element may be satisfied by a showing that "a landowner, acting under a mistake as to the true boundary between his property and that of another, takes possession of the land believing it to be his own and claims title thereto[.]" *Walls v. Grohman*, 315 N.C. 239, 249, 337 S.E.2d 556, 562 (1985). However, the hostility requirement is not met if the possessor's use of the dis-

puted land is permissive. *See, e.g., New Covenant Worship Ctr. v. Wright,* 166 N.C. App. 96, 104, 601 S.E.2d 245, 251-52 (2004) (finding hostility requirement not satisfied because the possessor's use of the disputed property was permissive); *McManus v. Kluttz,* 165 N.C. App. 564, 573-74, 599 S.E.2d 438, 446 (2004) (finding hostility requirement satisfied because the possessor's use of the disputed property was not permissive).

Plaintiffs contend that their possession of the disputed tract was hostile under *Walls* because they took possession of the disputed tract under a mistake as to the true boundary of their property and claimed the disputed tract as their own. Further, Plaintiffs note that when they approached the Thomases in April 1992, Plaintiffs believed they owned the disputed tract by adverse possession, and specifically told the Thomases the same. In addition, even after Plaintiffs spoke with the Thomases in 1992, Plaintiffs continued to believe that they owned the disputed tract by adverse possession. Plaintiffs argue that even if the Thomases granted Plaintiffs permission to continue to use the driveway as of April 1992, such permission was not sufficient to change Plaintiffs' use of the disputed tract from a hostile use to a permissive use. To support their argument, Plaintiffs cite the following statement from a North Carolina real estate treatise in its discussion of prescriptive easements: "Permission given *after* the hostile use has begun does not destroy the hostility."[2] James A. Webster, Jr. et al., *Webster's Real Estate Law in North Carolina* § 15-18(a) (5th ed. 1999). We disagree with Plaintiffs' contentions.

Plaintiffs correctly note that for possession to be hostile, the possessor must intend to claim title to the property at issue. However, a possessor's intent to claim title cannot support a claim of adverse possession where the true owner is never put on actual or constructive notice of the possessor's hostile intent. *See, e.g.; Bowers v. Mitchell,* 258 N.C. 80, 83, 128 S.E.2d 6, 9 (1962) (stating that a claim of adverse possession requires that "possession . . . be continuous, open, notorious, as well as adverse. It must be of such character as to put the true owner on notice of the adverse claim."). This notice concept is manifested in multiple elements of an adverse possession claim. *See, e.g., McManus,* 165 N.C. App. at 573, 599 S.E.2d at 445 (stating that "[p]ossession is open and notorious if it places the true owner on notice of an adverse claim"); *Daniel,* 158 N.C. App. at 172, 580 S.E.2d at 719 (stating that to meet the hostility requirement, the

2. Defendant correctly notes, however, that *Webster's* cites no case law in support of this proposition.

possessor's use of the property must be " 'of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under claim of right' " (quoting *Dulin*, 266 N.C. at 261, 145 S.E.2d at 875)). It therefore follows that if the possessor uses the land with the true owner's permission, yet secretly intends to claim title to the land, such possession is not hostile for purposes of establishing an adverse possession claim. The true owner's grant of permission negates the hostile nature of the possession, and the possessor has not "manifest[ed] and give[n] notice that the use is being made under claim of right." *Id.*

Plaintiffs contend, however, that pursuant to the above-quoted statement in the *Webster's* treatise, the Thomases' grant of permission to Plaintiffs in April 1992 could not destroy the hostile nature of Plaintiff's possession of the disputed tract. According to Plaintiffs, because their possession had been hostile until April 1992, the subsequent grant of permission from the true owners of the disputed tract could not negate Plaintiffs' hostile use. We disagree. While the statement in the *Webster's* treatise may be accurate in some cases, it is not accurate in all cases. It is true that once possession becomes hostile, a grant of permission from the true owner will not defeat such hostility *if* the possessor either rejects the grant of permission or otherwise takes some affirmative step to put the true owner on notice that the possessor's use of the land remains hostile. However, a true owner's grant of permission *will* defeat a possessor's hostile use if the possessor takes no further action to reassert his claim over the land. In such cases, the possessor has not put the true owner on notice that the possessor still intends to claim the disputed land as his own. *Accord McKenzie v. Pope*, 33 P.3d 1277, 1280 (Colo. Ct. App. 2001) (agreeing that after possession becomes hostile, the true owner's "grant of permission to the [possessor] to use the disputed property, and subsequent inaction by the [possessor], would be sufficient to interrupt the running of the statutory period of adverse possession"); *Zivic v. Place*, 451 A.2d 960, 962-63 (N.H. 1982) (holding that where the possessor's use of disputed land had been hostile for the first nineteen years of the twenty-year statutory period, and the true owner then gave the possessor temporary permission to continue using the disputed land, the possessor had no claim for adverse possession because the possessor "fail[ed] to take positive action alerting [the true owner] that [the possessor] intended to use the land against [the true owner's] wishes").

In the current case, the parties do not dispute that Plaintiffs' possession of the disputed tract was hostile during the eleven years between Plaintiffs' purchase of the Jones tract in 1981 and their conversation with the Thomases in April 1992. Further, neither party disputes that in April 1992, the Thomases gave Plaintiffs permission to continue to use the disputed tract. According to Mrs. Thomas' affidavit, when Plaintiffs approached the Thomases regarding a possible purchase of the disputed property, the Thomases gave Plaintiffs "temporary permission to use the small portion of the property on which the driveway encroached." The Thomases did so by telling Plaintiffs that they "could keep using the part of the driveway that encroached onto our land 'for now.' " Mr. Jones recalls that during this conversation, the Thomases told Plaintiffs to "just enjoy the land" and "don't worry about it." Likewise, during his deposition, Mr. Jones was asked whether he had "any sense that [Plaintiffs] didn't have permission to continue using the driveway" following the April 1992 conversation. Mr. Jones responded "no," indicating that he understood that he and Mrs. Jones had the Thomases' permission to continue to use the disputed tract. Mrs. Jones testified in her deposition that her husband's characterization of their conversation with the Thomases was accurate and complete.

Mr. Jones maintains that even after the April 1992 conversation, Plaintiffs believed that they still adversely possessed the disputed tract. However, Mr. Jones admitted in his deposition that between April 1992 and 2004, he never had any further conversations with the Thomases regarding the driveway encroachment, and never took any action or steps to indicate that he still wanted to acquire title to the disputed tract. Mrs. Jones likewise stated in her deposition that after April 1992, she had no further discussions with the Thomases regarding the encroachment. We therefore find that after April 1992, Plaintiffs' use of the disputed tract was permissive. There is no indication that Plaintiffs expressly rejected the Thomases' grant of permission, or otherwise took affirmative steps to put the Thomases back on actual or constructive notice that Plaintiffs intended to continue to possess the disputed tract in a manner hostile to the interests of the Thomases. Plaintiffs first manifested their hostile intent around July 2004 when they erected a fence around the disputed tract.

We find that Plaintiffs did not possess the disputed tract in a hostile manner for a continuous twenty-year period. Thus, Plaintiffs cannot establish a claim for adverse possession. The trial court therefore did not err in granting Defendant's motion for summary judgment.

In light of the foregoing, we do not address Plaintiffs' remaining arguments.

Affirmed.

Judge ELMORE concurs.

Judge TYSON dissents with a separate opinion.

TYSON, Judge, dissenting.

The majority's opinion affirms the trial court's grant of summary judgment for defendants and holds that plaintiffs failed to possess the disputed tract in a hostile manner for a continuous twenty-year period to establish a claim for adverse possession. I disagree and vote to reverse and remand the trial court's order. Genuine issues of material fact exist regarding whether defendants were placed on notice of plaintiffs' hostile intent to claim ownership of the disputed tract after the parties' discussion in 1992. I respectfully dissent.

## I. Standard of Review

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [a] party is entitled to a judgment as a matter of law. On appeal of a trial court's allowance of a motion for summary judgment, we consider whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Evidence presented by the parties is viewed in the light most favorable to the non-movant.

*Summmey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (alteration original) (internal citation and quotation omitted).

## II. Adverse Possession

In order to prevail on an adverse possession claim, a claimant must establish possession of the disputed property was "continuous, adverse, hostile, under known and visible lines and boundaries, and exclusive during the statutory period under a claim of title to the land occupied." *State v. Johnson*, 278 N.C. 126, 152, 179 S.E.2d 371, 388 (1971) (citation omitted). The only issue briefed in defendant's motion for summary judgment and addressed in the majority's opin-

ion concerns whether plaintiffs' possession of the disputed tract was hostile to the true owners.

Hostile use is generally defined as "simply a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under a claim of right." *Dulin v. Faires*, 266 N.C. 257, 261, 145 S.E.2d 873, 875 (1966). Where claim of title is founded upon a mistake our Supreme Court has held:

> when a landowner, acting under a mistake as to the true boundary between his property and that of another, takes possession of the land believing it to be his own and claims title thereto, *his possession and claim of title is adverse.* If such adverse possession meets all other requirements and continues for the requisite statutory period, *the claimant acquires title by adverse possession even though the claim of title is founded on a mistake.*

*Walls v. Grohman*, 315 N.C. 239, 249, 337 S.E.2d 556, 562 (1985) (emphasis supplied). It is undisputed that plaintiffs mistakenly believed the disputed tract was part of their property from 1981 until 1992, when plaintiffs conducted a survey to ascertain the boundaries of their property.

Upon discovering plaintiffs' possession and use encroached upon defendants' property, plaintiffs asserted to defendants they "had a legal right to the disputed tract by adverse possession." Plaintiffs offered to purchase the disputed tract from defendants in order to avoid the time and expense of litigation. In response to plaintiffs' offer, defendants told plaintiffs they could continue to utilize the tract and advised them to "enjoy the land" but they were not willing to sell plaintiffs the property.

Plaintiffs argue defendant's permission to use the disputed tract of land did not toll the running of the twenty-year statute of limitations required to adversely possess the property pursuant to N.C. Gen. Stat. § 1-40 (2005). I agree.

"Permission given *after* the hostile use has begun does not destroy hostility." 1 James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 15-18(a), at 722 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. (1999)) (emphasis original). The majority's opinion states, "[w]hile the statement in the *Webster's* treatise may be accurate in some cases, it is not accurate in all cases." The majority's opinion further states, "a true owner's grant of permission will defeat a possessor's hostile use if the possessor takes no further

action to reassert his claim over the land." In support of this proposition the majority's opinion cites several cases from other jurisdictions. The holdings in these cases have not been adopted and are not controlling in North Carolina. Further, adjoining jurisdictions have held contrary to the majority's assertion in analogous cases reviewing the subsequent creation of life estates. *See Kubiszyn v. Bradley*, 292 Ala. 570, 298 So.2d 9 (1974) (holding that once the statutory period for adverse possession commences to run against a landowner, the running of the statutory period is not suspended by the subsequent creation of a life estate); *Miller v. Leaird*, 307 S.C. 56, 62-63, 413 S.E.2d 841, 844-45 (S.C. 1992) ("[O]nce the statutory period for adverse possession is activated the subsequent creation of a life estate will not suspend the running of such period.").

North Carolina has adopted this reasoning in other contexts. Our Supreme Court has stated:

There is a well recognized rule that *when the statute of limitations has begun to run no subsequent disability will interfere with it*. Where the statute of limitations begins to run in favor of one in adverse possession against an owner who dies leaving heirs who are minors, their disability of infancy *does not affect the operation of the statute*, since the disability is subsequent to the commencement of the running of the statute.

*Battle v. Battle*, 235 N.C. 499, 502, 70 S.E.2d 492, 494 (1952) (internal citations and quotations omitted) (emphasis supplied); *see also Nicholas v. Furniture Co.*, 248 N.C. 462, 471, 103 S.E.2d 837, 844 (1958) ("It is well recognized law in this jurisdiction from the earliest times that when the Statute of Limitations has begun to run, no subsequent disability will stop it."). The reasoning in the preceding cases is applicable when a party has adversely possessed property for a substantial amount of the requisite statutory time period and the true owner attempts to thwart hostility simply by solely giving the party permission to use his property. Once adverse possession has begun and the owner is on notice, the burden shifts to the record owner to take physical or legal action to interrupt the running of the twenty year statutory period. After being notified of plaintiffs' claim, defendants failed to take any affirmative action to toll the running of the statute.

Presuming *arguendo* the majority's opinion articulates the correct legal position, genuine issues of material fact exist regarding whether defendants were placed on notice of plaintiffs' hostile intent

to claim the disputed tract as their own after the parties' discussion in 1992. Following the 1992 conversation, plaintiffs continued to use the driveway and maintained the shrubbery located on the disputed tract to the exclusion of defendants. Plaintiffs allege they continually asserted a legal right to the disputed tract by adverse possession. In 2004, plaintiffs erected a fence along the boundary line plaintiffs believed they had a right to claim. Defendants took no action to defeat plaintiffs exclusive possession of the disputed property.

## III. Conclusion

Defendants took no action, after notice of plaintiffs' claims, to defeat their open, continuous, exclusive, actual and notorious possession of defendants' property. Viewed in the light most favorable to plaintiffs, genuine issues of material fact exist regarding whether plaintiffs held possession of the disputed tract for the requisite statutory twenty-year period. *Summey*, 357 N.C. at 496, 586 S.E.2d at 249. The trial court's order granting defendants' motion for summary judgment should be reversed and remanded for trial. I respectfully dissent.