MURPHY, Judge.
We address whether a property owner has adversely possessed an entire lot when he has lived on it and maintained it for over twenty years. Defendant, Deborah Faye Petty ("Ms. Petty"), appeals from entry of judgment in Plaintiffs Donald E. Slade ("Donald") and Yvette T. Slade's ("Yvette") favor, finding that they had adversely possessed Lot 16 in its entirety. We reiterate that an unpublished opinion does not constitute controlling legal authority, and based on the parties' stipulations at trial and the issues now before us on appeal, we affirm the trial court's judgment that Donald and Yvette adversely possessed Lot 16.
BACKGROUND
Dewey Slade and his wife, Daisy Slade, owned land in Alamance County. In either 1964 or 1965, Dewey and Daisy's son, Donald, asked if he could place a trailer on their property. At the time, the trailer sat on one undivided parcel. Donald began living there with his then-girlfriend, Yvette, in or around 1978, and they continued to live there after they married in 1983. At some point, Dewey subdivided the land. In the early 1980's, after Dewey died, Daisy conveyed the subdivided land, giving four lots to Donald and four to her other son, James: relevant to this case, Donald received Lot 18 and James received Lots 15 and 16. Donald's trailer straddled the line between Lots 15 and 16. Donald testified that at some point in the 1980's, he and Yvette replaced the trailer with a manufactured home, facing a different direction but otherwise in approximately the same location.
James realized that he owned the land where Donald and Yvette placed their home when his property tax bill increased significantly. James, who had been paying the taxes on Lots 15 and 16, gave the increased bill to Donald to pay. In 1990, James and Donald went to an attorney to "swap deeds," James giving Lot 15 to Donald and Yvette so that they would own the land under their home, and Donald and Yvette giving Lot 18 to James. They had neither a survey nor a title search performed.
Lot 16 abuts a public road and is just under half an acre in size. Based on the record, the home appears to be located within a quarter of an acre from the road. While living there, Donald and Yvette planted some azalea bushes and an apple tree on the lot. Donald also built two decks attached to the home, "kept [the property] mowed," and planted a grapevine prior to James's death in 2002. Donald and Yvette never fenced in Lot 16 or placed any markings showing the boundaries of Lot 16 because they did not know precisely where the boundaries were. They had three mortgages on their home and each Deed of Trust referred only to Lot 15.
On 10 May 2002, when James died intestate, his daughter, Belinda Slade, inherited Lot 16. She paid the taxes on the lot from 2002 until 2012. However, on 30 May 2007, Belinda deeded the property to her friend, Ms. Petty. In 2007, Belinda realized that Donald and Yvette's home was on Lot 16 and attempted to sell the land to them, but they refused. Ms. Petty had Lot 16 surveyed in 2007. Belinda renewed her attempt to sell Lot 16 to Donald and Yvette in 2009 and they again refused to negotiate. When the tax bill increased in 2013, Belinda informed the tax office to send the bill to Donald and Yvette and they began paying the taxes on Lot 16. Donald and Yvette subsequently brought suit to quiet title and for a declaratory judgment finding they had acquired title to Lot 16 by adverse possession.
At trial, the parties stipulated to the possession being actual, continuous, and exclusive:
Judge : All right. You stipulate the first three prongs on the adverse possession have been met?
Defense Counsel : Yes, Your Honor.
Judge : So this case today is about the second two prongs ....
Defense Counsel : Correct, Your Honor.
Judge : All right. And the second-it's the last two prongs I think but it's open and notorious and hostile, right?
Defense Counsel : Yes.
Thus, the only issues at trial were whether Donald and Yvette's use of the lot was (A) open and notorious and (B) hostile such that they adversely possessed the entire lot. After a bench trial, the trial court concluded that Donald and Yvette had adversely possessed Lot 16 in its entirety and declared them to be the owners. Ms. Petty timely appealed.
ANALYSIS
Ms. Petty challenges the trial court's judgment, arguing that Donald and Yvette's possession of Lot 16 was neither hostile nor open for the statutorily required twenty years. N.C.G.S. § 1-40 (2017). She argues that James permitted Donald and Yvette's possession of Lot 16, that they did not present evidence to rebut this presumption of permissive use, and that their possession was not open and notorious.
"The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." Cartin v. Harrison , 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (2002) (citation and quotation marks omitted). Donald and Yvette argue that there is competent evidence to support the trial court's conclusion that they adversely possessed Lot 16 in its entirety.
"In North Carolina, [t]o acquire title to land by adverse possession, the claimant must show actual, open, hostile, exclusive, and continuous possession of the land claimed for the prescriptive period ... under known and visible lines and boundaries." Jones v. Miles , 189 N.C. App. 289, 292, 658 S.E.2d 23, 26 (2008) (alterations in original) (citation and quotation marks omitted).
A. Open and Notorious
Openness requires that the occupant's possession "be decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner." Locklear v. Savage , 159 N.C. 236, 238, 74 S.E. 347, 348 (1912) (citations omitted). In order to establish the required open and notorious element, the possession must be such that the adverse possessor gives notice to the world that he claims the land as his own:
[A]dverse possession is based upon an assertion of ownership rights as against all persons , not simply the record owner. In order to establish open and notorious possession, a claimant must show acts of possession of such a nature as to give notice of his claim of ownership to the whole world .
Lake Drive Corp. v. Portner , 108 N.C. App. 100, 103, 422 S.E.2d 452, 454 (1992) (citations and quotation marks omitted).
On this issue, Ms. Petty challenges the trial court's Findings of Fact 9 and 10 and Conclusion of Law 2. Regarding Finding 9, Ms. Petty challenges whether Lot 16 is "clearly within the curtilage of the house":
Plaintiffs kept the property up, planted azaleas, and an apple tree. At the far side of lot 16 they planted a grapevine. Although lines were not marked or staked, lot 16 is clearly within the curtilage of the house and the plaintiffs maintained the yard. The property abuts a public road. The maintenance of the property, the location of the house and the plantings would make it obvious that plaintiffs claimed lot 16 as part of their property.
The survey map introduced at trial shows that Lot 16 is less than half an acre in size. Furthermore, the majority of the home is on Lot 16. Based on this evidence, we conclude that Finding of Fact 9 inasmuch as it states that Lot 16 is clearly within the curtilage of the home is supported by competent evidence.
Ms. Petty next challenges Finding of Fact 10:
It is undisputed there is no contradictory evidence that plaintiffs [sic] possession has been open and that they have had continuous and exclusive possession since before 1970. No one contested ownership until about 2007 and plaintiffs refused to acknowledge ownership in anyone else and asserted it was their property.
Ms. Petty's only challenge to Finding of Fact 10 is the trial court's statement that the openness element was "undisputed." We are mindful that "[i]t is the duty of the trial judge to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." Sauls v. Sauls , 236 N.C. App. 371, 373, 763 S.E.2d 328, 330 (2014) (citation and quotation marks omitted). While the contested portion of Finding 10 is correctly categorized as a finding of fact, it reflects the trial court's duty to consider all evidence and decide credibility. "It is not the function of this Court to reweigh the evidence on appeal." Garrett v. Burris , 224 N.C. App. 32, 38, 735 S.E.2d 414, 418 (2012), aff'd mem. , 366 N.C. 551, 742 S.E.2d 803 (2013). This portion of Finding 10 is the result of the trial court's weighing of the evidence and we therefore decline to further address Ms. Petty's challenge.
Ms. Petty also challenges the trial court's Conclusion of Law 2 that Donald and Yvette met the openness requirement of adverse possession:
Plaintiffs have acquired title to lot 16 by adverse possession inasmuch as their actual possession has been open, continuous and uninterrupted, exclusive and notorious for well in excess of thirty years.
"Possession is open and notorious if it places the true owner on notice of an adverse claim." McManus v. Kluttz , 165 N.C. App. 564, 573, 599 S.E.2d 438, 445 (2004) (citation omitted). However, "[w]hile giving notice to the record owner is the gist of the open and notorious requirement, it is clear that the adverse possessor need not know who the true owner is. The true owner need not know he is the true owner." Webster's Real Estate Law in North Carolina § 14.05 (2017) [hereinafter Webster's ] (footnote omitted); see Marlowe v. Clark , 112 N.C. App. 181, 187, 435 S.E.2d 354, 358 (1993) (holding that a requirement that the true owner must know he is the true owner for an adverse claim to be successful "would run counter to the basis of adverse possession"). Thus, the open and notorious requirement is satisfied if the possession is "of such a character as to warrant the inference that the owner ought to know that one is asserting dominion over his land." Webster's § 14.05 (emphasis added) (footnote omitted); see Locklear , 159 N.C. at 237, 74 S.E. at 348 ("[P]ossession ... is denoted by the exercise of acts of dominion over the land ... in opposition to right or claim of any other person, and not merely as an occasional trespasser.").
We therefore conclude that the home and the improvements to Lot 16, converting the same into its curtilage, is such an open display of ownership that the world could see, and that the true owner ought to see, that Donald and Yvette claimed the whole of the land. Webster's § 14.05. Donald and Yvette's home has been located on Lot 16 since the 1980's. Before that, they lived in a trailer in the same location on Lot 16. While they lived there, they planted bushes, a tree, and a grapevine. Donald maintained Lot 16 by mowing the grass. Because Donald and Yvette made consistent use of Lot 16 by maintaining various amenities, the true owner, and indeed, anyone driving down the street, could see that Donald and Yvette made use of Lot 16 as if they actually owned it. This is sufficient for the open and notorious element to be satisfied:
If the acts of possession are of such a nature that everyone in the community, including the owner, knows or by observing could know that the claimant is claiming the land as his own and that the acts are not merely acts of temporary trespass, the requisite openness and notoriety are established.
Webster's § 14.05. We therefore conclude that Findings of Fact 9 and 10 are supported by competent evidence and that these findings support Conclusion of Law 2 that Donald and Yvette satisfied the open and notorious requirement.
B. Hostile
"The requirement that possession must be hostile in order to ripen title by adverse possession does not import ill will or animosity but only that the one in possession of the lands claims the exclusive right thereto." State v. Brooks , 275 N.C. 175, 180, 166 S.E.2d 70, 73 (1969) (citations omitted).
We first address Ms. Petty's arguments that the trial court's Findings of Fact 7, 8, 9, and 15 are unsupported by the evidence.
Ms. Petty first challenges Finding of Fact 7, specifically, whether Donald paid the tax bill until 2002:
James paid taxes for the bills that came to his mail box, which was adjacent to Donald (neither had a box number at that time) and Donald paid taxes on the bills that came to him. James was actually paying taxes on lots 15 and 16. However, when plaintiffs built [their home], the tax bill for the property increased substantially and James gave the bill to Donald to pay, which he did until 2002.
We agree with Ms. Petty that Finding 7 inasmuch as it states that Donald paid the tax bill until 2002 is not supported by competent evidence. Donald testified that he only received the tax bill from James once. In fact, the record shows that the tax bills did not begin coming directly to Donald's address until 2012. Yvette testified that before the tax office began sending the bills for Lot 16 to them, they only paid the bill for Lot 16 once-when James brought the bill to them. There is no evidence that Donald consistently paid the tax bill for Lot 16 until 2002. Therefore, the trial court's finding that Donald paid the taxes for Lot 16 until 2002 is not supported by competent evidence and is set aside.
Ms. Petty next challenges Finding of Fact 8:
The Court finds by a preponderance of the evidence that neither brother knew or comprehended which lots they actually owned. ... The Court expressly finds that neither brother understood that plaintiffs' house was located on both lot 16 (mostly) and lot 15.
We find that there is competent evidence to support Finding 8. Donald specifically testified that he did not know on which lot his home sat:
Plaintiff's Counsel : [A]t some point, Mr. Slade, did your brother James ... give you a tax bill?
Donald : Yes. Tax bill done went to his house ....
Plaintiff's Counsel : Okay. And at that time what did you believe that lot to be, if you knew?
Donald : I thought it was 16 where I had my trailer.
Plaintiff's Counsel : You thought it was Lot 16?
Donald : Yeah.
Plaintiff's Counsel : Did you think that Lot 15 and 16 was one lot or two separate-
Donald : Well, I didn't know because we hadn't looked at no map or nothing. I know I put my trailer on the side I built the house.
Donald repeatedly testified that he "didn't know then" that he was on Lot 16. Consequently, there is competent evidence to support the trial court's finding that Donald did not know his home was on Lot 16. There is also competent evidence to support the trial court's determination that James did not know on which lot the home sat. When the drastically increased tax bill for Lot 16 went to James, he sent the bill to Donald. This resulted in the brothers' visit to an attorney to swap deeds so the bill for the home would go to Donald in the future. However, James swapped Lot 15 rather than Lot 16. The brothers' attempt in 1990 to correct the confusion over the lot ownership by swapping the incorrect deed demonstrates that James also did not understand where the majority of the home was located. Finding of Fact 8 is therefore supported by competent evidence.
Regarding Finding of Fact 9, Ms. Petty challenges the trial court's finding that James did not know which lot he owned and that both brothers assumed Lots 15 and 16 were one:
[James] never asked [Donald] to move from lot 16 and the Court expressly finds from the evidence that each brother assumed, and acted upon the assumption, that lots 15 and 16 were one lot.
Donald testified that James never asked him to move out of the home on Lot 16:
Defendant's Counsel : While you were-while he was living, he never once asked you to move your house?
Donald : No.
Donald further testified that since the placement of his home, no one had asked him to move off of the property. Thus, there is competent evidence to support that part of Finding 9 which states that James never asked Donald to move from Lot 16. However, we conclude that there is not competent evidence to support the trial court's finding that both brothers acted upon the assumption that Lots 15 and 16 were one. Donald's testimony was undoubtedly confused at times:
Plaintiff's Counsel : [W]hen you went to [the attorney's] office to try to clear up the title issue, did you think-what lot did you think your house was on?
Donald : I thought it was on 16.
....
Plaintiff's Counsel : But if you thought it was Lot 16, you understand that [the attorney] or your brother didn't deed you Lot 16. So are you getting confused?
Donald : Well, when we traded we thought-we know it was on 15. When we-I still thought that my trailer was on 15, too.
....
Judge : Mr. Slade, you just said you thought your trailer was on Lot 16.
Donald : Right.
Judge : Then you said you thought it was on 15.
Donald : No. That's what we traded lots. See we had not saw no maps. I didn't know where a map-didn't even know nothing about no maps until this here come up. We just going by what they told us the lots was. I didn't know-I didn't even know what lot my trailer was on. I put the house where my trailer was. I didn't know what lot it was.
Plaintiff's Counsel : So when you went to [the attorney's] office, what did you want him to do?
Donald : To switch lots. To put that-to-they said the house was on 15.
....
Plaintiff's Counsel : At the time that you went to [the attorney's] office, did you think that 15 and 16-did you believe that lot to be one lot?
Donald : I just thought it was all one lot.
Because Donald testified that he thought Lots 15 and 16 were one, we conclude that there is competent evidence to support the portion of Finding of Fact 9 that relates to Donald's belief that the two lots were one. However, we find no evidence in the record that James thought the lots were one. We therefore conclude that Finding of Fact 9 inasmuch as it says James assumed and acted upon the assumption that the lots were one is not supported by competent evidence.
Ms. Petty also challenges Finding of Fact 15:
The Court expressly finds that at all times [Donald and Yvette] believed they were the owners of lots 15 and 16, which they believed to be one lot and that James Slade intended to convey the property on which the house sits (lots 15 and 16) to his brother.
We conclude that Finding of Fact 15 insofar as it says that Yvette believed Lots 15 and 16 to be one lot and that she and Donald were the owners of that lot is not supported by competent evidence. While Donald testified that he believed the lots were one, Yvette testified, "I believe my house was on 15 all the time." Yvette did not testify that she believed at any time the lots were one, and there is no evidence in the record suggesting that she did. Moreover, the trial court's finding that James intended to convey both Lot 15 and Lot 16 to Donald is unsupported by the evidence. The deed swap is evidence only that James intended to convey the property on which the home sits to Donald in exchange for one lot. While James intended to give Donald the land on which the home sat, there is no evidence that James intended to give both lots to Donald. Therefore, Finding of Fact 15 is supported by competent evidence only to the extent that Donald believed Lots 15 and 16 were one and that James intended to give his brother the property on which his home sat.
Finally, Ms. Petty challenges the trial court's Conclusion of Law 2 that Donald and Yvette's possession was hostile. "A 'hostile' use is simply a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under a claim of right." Dickinson v. Pake , 284 N.C. 576, 581, 201 S.E.2d 897, 900 (1974) (citation omitted). Furthermore, a person's possession can be hostile even if the true owner does not realize he is the true owner. See Marlowe , 112 N.C. App. at 186, 435 S.E.2d at 357 (stating that there is no North Carolina precedent requiring the true owner to know of his interest in the land before possession can be considered hostile); Webster's § 14.06 ("Possession can be hostile even as against an owner who is unaware that he is the true owner." (footnote omitted) ). "The requirement that possession be 'hostile' simply connotes that claimant asserts exclusive right to occupy the land." Lake Drive Corp. , 108 N.C. App. at 103, 422 S.E.2d at 454 (citation omitted).
Ms. Petty claims that the trial court's Findings of Fact do not support the Conclusion of Law that Donald and Yvette's possession was hostile. "[T]he hostility requirement is not met if the possessor's use of the disputed land is permissive." Jones , 189 N.C. App. at 292-93, 658 S.E.2d at 26. Therefore, we must first determine whether Donald and Yvette's possession was permissive. Id. The evidence shows that Donald initially asked and was granted permission from his father to place the trailer on what is now Lot 16. After careful consideration, we conclude that Donald and Yvette's possession of Lot 16 was permissive from the time Donald placed the trailer onto the lot until the day his mother conveyed Lot 16 to James. Ms. Petty does not challenge the trial court's Finding of Fact that when Daisy conveyed the land in 1980, she intended that Lot 16 go to James.[1] The fact that Daisy gave James Lot 16 even after Donald had lived on it for years shows her intent for Donald not to possess that land. However, Donald continued to occupy and maintain Lot 16. "[The hostility requirement] only means that the one in possession of the land claims the exclusive right thereto." Brewer v. Brewer , 238 N.C. 607, 611, 78 S.E.2d 719, 722 (citation omitted). We therefore conclude that once Daisy deeded Lot 16 to James in 1980, Donald's possession was no longer permissive.
The question would then become whether Donald and Yvette acted under a claim of right to Lot 16 since 1980. See Dickinson , 284 N.C. at 581, 201 S.E.2d at 900. However, due to the parties' stipulation of continuous possession, we need not address the lack of evidence related to the timing of the hostile activities. "A stipulation is a judicial admission, dispensing with proof, recognized and enforced by the courts as a substitute for legal proof." Realtors, Inc. v. Kinard , 45 N.C. App. 545, 546, 263 S.E.2d 38, 39 (1980) (citation omitted). Stipulations are "therefore binding in every sense." Thomas v. Poole , 54 N.C. App. 239, 241, 282 S.E.2d 515, 517 (1981). However, we note that the trial court should have included the parties' stipulations in its Findings of Fact:
[W]hile Rule 52(a)[2] does not require a recitation of the evidentiary and subsidiary facts required to prove the ultimate facts, it does require specific findings of the ultimate facts established by the evidence, admission and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached.
In re Anderson , 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002) (emphasis removed) (citation omitted). Because the parties stipulated to the other required elements for adverse possession, we continue our analysis without reference to them.[3]
The evidence shows that Donald and Yvette placed a home on Lot 16 during the 1980's. They also planted bushes, a tree, and a grapevine, and mowed Lot 16. Although they were not hostile in the sense that they did not show ill-will toward James or his daughter, ill-will is not required. See Brooks , 275 N.C. at 180, 166 S.E.2d at 73. It is enough that they possessed the land in such a way that the true owner, and indeed the world, could know that they claimed the lot as their own. See Lake Drive Corp. , 108 N.C. App. at 103, 422 S.E.2d at 454 ("A claim of adverse possession is based upon an assertion of ownership rights as against all persons , not simply the record owner."). Because Donald and Yvette placed a home on Lot 16 and maintained the lot as its curtilage, we conclude that they acted at all times as if they were the true owners of Lot 16.
Donald and Yvette's claim to the land is further evidenced by their interactions with James's daughter, Belinda. When Belinda attempted to negotiate with Donald and Yvette, they twice rejected her offer to sell them the land. Furthermore, when Ms. Petty approached Donald and Yvette with a deed to the lot as proof of her ownership, Donald stated, "I suggest you get off my property," and said he would pull the survey flags out of the ground. When Ms. Petty's lawyer attempted to contact Donald, he refused to talk. Based on this evidence, we find that Donald and Yvette acted at all times as if Lot 16 was rightfully their own. We therefore conclude that their possession was hostile.
CONCLUSION
The surviving challenged Findings of Fact that are supported by competent evidence in turn support the contested Conclusion of Law. Therefore, based on the parties' pretrial stipulations and the supported Conclusions of Law, we affirm the trial court's judgment.
AFFIRMED.
Report per Rule 30(e).
Judges CALABRIA and ARROWOOD concur.

In relevant part, Finding of Fact 7 states, "After the father's death, Daisy Slade conveyed 4 lots to her son, Donald, and 4 lots to her son, James. Included in the conveyance to James were lots 15 and 16."

In part, Rule 52 states, "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C.G.S. § 1A-1, Rule 52(a).

Because the parties also stipulated to the possession being actual, we do not address Ms. Petty's argument that Donald and Yvette did not establish the open and notorious and hostile elements as to all of Lot 16. We recognize that there is some overlap necessarily involved in the analysis of the elements for adverse possession. See Webster's § 14.04 ("It is also fair to conclude that the 'actual' requirement mandates the possession be such that the overlapping requirement of 'open and notorious' is also satisfied."). However, we are bound by the stipulations made at trial, and therefore are unable to consider the extent to which Donald and Yvette exercised possession over the entirety of Lot 16.